**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Stanislaw NOWAK, Defendant.**
**No. 12391.**

United States District Court
E. D. Michigan, S. D.

July 15, 1955.

**192**

Fred W. Kaess, Dwight K. Hamborsky, Detroit, Mich., for the United States.

Goodman, Crockett, Eden & Robb, Detroit, Mich., for defendant.

PICARD, District Judge.

Action to cancel defendant's citizenship pursuant to provisions of the Nationality Act of 1940, Title 8 U.S.C. § 738(a)[1] on grounds that his naturalization under Nationality Act of 1906 was illegally and fraudulently procured.

### I. As to Illegality

That:

(a) Defendant concealed and falsely denied communist party membership;

(b) he was not at the time of his naturalization a person of good moral character, attached to the principles of the Constitution of the United States; and

(c) was not well disposed to the good order and happiness of the United States.

Note: This court believes that the facts required to prove (b) and (c) would be the same and therefore we treat these two as one.

### II. As to Fraud

That:

(a) Defendant was asked by the naturalization examiners whether he had ever been a member of the Communist Party of the United States to which he falsely answered, "No"; and

(b) answering question No. 28 in his preliminary petition for naturalization defendant denied he had ever belonged to, or had ever been affiliated with, any organization which taught or advocated overthrow of the existing government in this country, when in fact he was a member of the Communist Party with knowledge that it taught and advocated such violent overthrow of this government.

If plaintiff is to prevail it must prove at least one of its contentions by " 'clear, unequivocal, and convincing' " evidence. Schneiderman v. United States, 320 U.S. 118, 63 S.Ct. 1333, 1352, 87 L.Ed. 1796.

But before considering "all facts" or "degree of proof" required, this court immediately eliminates government's claim as to the first "illegality" as a ground for revoking defendant's citizenship because both parties agree that the Nationality Act of 1906, in effect when Nowak was naturalized, must govern this contention.

The prohibitions of the Nationality Act of 1906 were primarily directed at polygamists and anarchists; not communists. In addition to being captioned "Anarchist or Polygamist" the statute is couched in language definitive of the tenets of anarchism as opposed to communism. It covers "disbelief in" and "opposition to" organized government and the unlawful assaulting and killing of government officials. On the other hand, seldom, if ever, has dispensation with all government been considered a tenet of communism. Contrarily the very essence of communism is its complete subjugation of all persons to the will of the state—under that doctrine, a political leviathan.

This court concludes, therefore, that nothing contained in Section 7 of the Nationality Act of 1906, 34 Stat. 598, being Title 8 U.S.C. § 364,[2] barred naturalization of one because he was a member of the Communist Party. But, while Illegality "a" is therefore erased, we still must treat subsection 4 section 4 of the Nationality Act of 1906, 45 Stat. 1513, Sec. 6(b) being Section 382 of Title 8 U.S.C.,[3] separately herein.

1. Now 8 U.S.C.A. § 1451(a).

2. Now 8 U.S.C.A. § 1424.

3. Now 8 U.S.C.A. § 1427.

This court further dismisses, as of itself a sole ground for revoking defendant's citizenship, plaintiff's first contention of fraud—to-wit, that defendant was asked by the naturalization examiners whether he had ever been a member of the Communist Party of the United States to which he supposedly answered "No." We do this because in our opinion proof on this point is not " 'clear, unequivocal, and convincing' ". The two naturalization examiners, both testifying more than sixteen years after they had first interviewed petitioner, claim they remembered asking Nowak at the time of the original examination if he "was or had ever been a member of the Communist Party of the United States." These witnesses gave several reasons for so remembering among them that they had previous to such examination heard he was a communist and that he was notorious, his name having appeared in the newspapers many times. This, they, in effect said, made them "primed" for Nowak when he did appear.

But, although both examiners had made written notations on the examining petition of Nowak's answers to certain questions that were not part of the written petition, still for some reason or other, this all important question, "Are you now or have you ever been a member of the Communist Party?" is not even referred to in their written answers or their notes. These examiners have interviewed hundreds of persons seeking naturalization during the intervening years and it seems to this court inconceivable that after having seen and interviewed defendant only once that they could remember asking one specific question of one specific petitioner after all those years. If they had asked such a question wouldn't they have made a note of it some place as they did concerning many less important questions not included in the petition as a question to be asked? We do not seek to impugn the veracity of these two witnesses nor to imply that they deliberately gave false testimony. We simply feel that the lapse of years, fallibility of the memory, and information about Nowak received later had a tendency to influence their testimony at the time of trial. This evidence fails to meet the standard required in denaturalization cases.

Standing alone we dismiss the first fraud.

### Findings of Fact

Defendant filed his petition for citizenship on December 15, 1937 and became a citizen June 13, 1938. From all testimony received, this court has arrived at the conclusion that defendant became a member of the Communist Party about the middle of 1935, that he continued as a member of the party at least through 1937 and 1938, knowing of its main aim and objective which was the overthrow of this government by force and violence; that he approved of that aim and objective before and when he became a member of the Communist Party of the United States; that so far as we have been able to ascertain, he still does to this day; and further that he intended to conceal such membership and such knowledge both when he signed his petition and when he was examined. This evidence came from many witnesses, some of whom stated they had attended closed Communist Party meetings from 1937 to 1943 at which defendant was present. Their testimony, with one exception, which we have ignored completely (Thaddeus Zygmont) was clear, straightforward, unequivocal and convincing.

Witness Budenz—Attended closed Communist Party functionary meetings with Nowak from late 1937 until 1943 or 1944; knew Nowak to be a Communist Party member for these years; attended enlarged National Committee meetings of Communist Party with Nowak, one in 1938 and two in the forties.

Witness Fountain—Attended closed Communist Party meetings in Detroit with Nowak from June 1937 through 1938; knew Nowak to be a Communist Party member; attended Communist Party schools where Nowak lectured on

"Strategy of the Communist Party in relation to labor, and rise of Hitler".

Witness Eager—Nowak solicited Eager's membership in Communist Party in 1937; knew Nowak was a Communist Party member and attended many closed Communist Party meetings from 1937 through 1938.

Witness Nowell—Knew Nowak was a member; he solicited Nowak's membership; was present at his induction; attended closed Communist Party meetings from 1935 through 1936 with Nowak.

Witness Hewitt—Knew Nowak to be a member of the Communist Party in 1938; collected Communist Party dues from Nowak in 1938 and 1939; attended closed Communist Party meetings with Nowak.

Witness Reno—Knew Nowak to be a Communist Party member from July or August 1937 to December 1938; attended functionary meetings with Nowak; closed Communist Party meetings and an enlarged National Committee meeting in December 1938 with Nowak. Also saw his Communist Party card.

Witness Rataj—Attended one closed Communist Party meeting with Nowak in fall of 1937.

Witness Herbster—Attended one closed Communist Party meeting with Nowak in summer of 1937.

Such testimony remains unimpeached though subjected to thorough cross-examination. In addition, none of it has been contradicted and it is overwhelming.

■■ We agree that mere membership in an organization does not prove knowledge of its aims and objectives and that "utterances of its more vocal members cannot be imputed" to Nowak to show that he accepted or believed in the principles of the organization. See United States v. Hauck, 2 Cir., 155 F.2d 141. But here we are not concerned with belief or acceptance. It is sufficient if it is shown that defendant knew what the aims and objectives of the Communist Party were at the time he was a member

and naturalized, and it is well recognized that external circumstance such as communication of facts, is available to show that consciousness or knowledge ensued as a result thereof. See Wigmore on Evidence, Volume I, Second Edition, sections 244–245; Frankfeld v. United States, 4 Cir., 198 F.2d 679.

As to the aims and objectives of the Communist Party, this court in United States v. Charnowola, D.C., 109 F.Supp. 810, 812 stated:

"Both here and in Russia it is now apparent that at all times the Communist Party aimed to destroy America by force and violence."

This language was quoted with approval in Sweet v. United States, 6 Cir., 211 F.2d 118, certiorari denied 348 U.S. 817, 75 S.Ct. 28. In fact, in view of the many decisions we believe it cannot now be seriously questioned but that the ultimate aims and objectives of the Communist Party include the violent and forceful overthrow of this government.

See American Communications Association, C. I. O. v. Douds, 339 U.S. 382, 70 S.Ct. 674, 94 L.Ed. 925; Carlson v. Landon, 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547; and Harisiades v. Shaughnessy, 342 U.S. 580, 72 S.Ct. 512, 96 L.Ed. 586. But if proof was further needed in the case at bar we hold that the government has met that requirement and also that defendant remained a member of the Communist Party knowing such aims and objectives and approved thereof.

■ This court also finds that because of his position in the community Nowak was more valuable to the Communist Party than the ordinary member. His membership in fact was so sacrosanct as to be kept secret from other members although he was known to have given lectures in the communist school, attended closed meetings (including enlarged national committee meetings where only the most trusted leaders were in attendance) and that he was well known in the communist center of New York. This is all about the time (before and after) he became an American citizen and defend-

ant's conduct, though subsequent to his naturalization, is competent to show his state of mind at the time of his naturalization. Orth v. United States, 4 Cir., 142 F.2d 969; United States ex rel. Harrington v. Schlotfeldt, 7 Cir., 136 F.2d 935. We believe the fact that he kept his membership secret was counseled by knowledge on his part that certain inconsistencies existed between United States citizenship and membership in the Communist Party. Conduct, which forms a basis from which inferences may be drawn, is evidence. Hupman v. United States, 6 Cir., 219 F.2d 243. In any event the concealment is not viewed with charity by this court.

This court also finds that defendant answered "No" to question No. 28 of his original petition, "Do you belong to or are you associated with any organization which teaches or advocates * * * overthrow of existing government in this country?"

Conclusions of Law

The Nationality Act of 1906, Section 4, 34 Stat. 598, under which defendant was naturalized, did have the provision that no alien should be admitted to citizenship unless a person

"of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the same."

And also that Congress enacted legislation in 1918 adding to the other exclusions from admittance to the United States of aliens

"who believe in, advise, advocate, or teach, or who are members of or affiliated with any organization, association, society, or group, that believes in, advises, advocates, or teaches:

"(1) the overthrow by force or violence of the Government of the United States or of all forms of law, * * *

"(g) Any alien who, at any time after entering the United States, is found to have been at the time of entry, or to have become thereafter, a member of any one of the classes of aliens enumerated in this section shall, upon the warrant of the Secretary of Labor, be taken into custody and deported in the manner provided in this subchapter." Section 137(c) and (g), Title 8 U.S. C.[4]

■ Defendant admittedly answered question No. 28 in his preliminary petition denying that he was a member of any organization that advocated overthrow of this government. Therefore, since at the time defendant petitioned for naturalization the Communist Party had been held to be and was an organization advocating the overthrow of this government by force and violence, United States ex rel. Vojewvic v. Curran, 2 Cir., 11 F.2d 683; Jurgans v. Seaman, 8 Cir., 25 F.2d 35; Antolish v. Paul, 7 Cir., 283 F. 957; Skeffington v. Katzeff, 1 Cir., 277 F. 129; United States ex rel. Abern v. Wallis, D.C., 268 F. 413; Kjar v. Doak, 7 Cir., 61 F.2d 566, a fact well known to defendant, we conclude that defendant by answering question No. 28 in the negative intentionally concealed his membership in the Communist Party of the United States. Therefore this court holds that proof of those facts constitutes ground for cancellation of his citizenship. He was not then a person

"of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the same."

To enlarge upon our rationale; when defendant in question No. 28 denied that he was a member of any such organization, he was and he knew he was such a member, having knowledge of its aims and objectives. Therefore it was not only illegal for him to become a citizen of the United States but in concealing

---

**4.** Now 8 U.S.C.A. § 1182.

Communist Party membership he committed a fraud.

This court said in United States v. Charnowola, supra:

"* * * every applicant for citizenship in this country must come in with clean hands. There can be no fraud in the securing of that citizenship, whether that fraud be failure to disclose what it is obvious must be material or be an outspoken misrepresentation. Under some circumstances silence may be as reprehensible as a false statement."

Defendant's failure to make proper disclosure was not innocent. The concealment was deliberate—dictated by a desire to mislead lest what he was seeking would be denied.

Further, in considering defendant's attachment to the principles of the Constitution, here again we are dealing with a state of mind, to-wit—defendant's intention at the time he swore allegiance to this country. Our guide is defendant's own words and conduct both prior and subsequent to his oath. Knauer v. United States, 328 U.S. 654, 66 S.Ct. 1304, 90 L.Ed. 1500; Orth v. United States and United States ex rel., Harrington v. Schlotfeldt, supra. What more could be necessary?

Through the thirties this defendant was a militant communist. At one time he said, referring to the actions of the members of the Communist Party—

"* * * the goal of all this activity was to extend the Soviet system around the face of the earth."

Note the words—"the Soviet system"—Was defendant attached to the principles of our Constitution?

The court has carefully read Schneiderman v. United States, supra and Baumgartner v. United States, 322 U.S. 665, 64 S.Ct. 1240, 88 L.Ed. 1525, two controlling opinions in denaturalization cases. We think this case distinguishable from those two for the reason that Nowak's conduct does not consist of sporadic expressions indicating that all cultural ties with the motherland have not been severed. Indeed the rivalry here is not between land of birth and land of adoption, but between the latter and a political ideology. Furthermore, while vocal outbursts often belie the mind, no such disparity exists between thought and continuous, systematical conduct. We also note that in the Baumgartner and Schneiderman cases the defendant took the stand and explained away the allegedly incriminating statements. In this case defendant did not. Failure to do so has often been the subject of judicial comment. See Luria v. United States, 231 U.S. 9, at page 19, 34 S.Ct. 10, 58 L.Ed. 101. It has been held even in criminal cases that

"* * * where the party having the burden makes a probable case on an issue as to which the accused has peculiar knowledge of the facts and may easily prove them and the prosecution cannot, an inference arises that the truth is with the prosecution." Williams v. United States, 5 Cir., 170 F.2d 319, 322.

Certainly defendant would know better than any other person what his state of mind was at a given time. Yet defendant did not see fit to testify nor did he offer to explain his failure to do so.

Citizenship is priceless and courts are reluctant to take it away once it has been given. But in cases where it is shown that it was wrongfully obtained courts have no alternative but to rectify the wrong.

Judgment for plaintiff.