NOWAK *v.* UNITED STATES.

No. 72.   Argued January 28, 1958.—Decided May 26, 1958.

*Ernest Goodman* argued the cause for petitioner. With him on the brief was *George W. Crockett, Jr.*

*J. F. Bishop* argued the cause for the United States. With him on the brief were *Solicitor General Rankin, Acting Assistant Attorney General McLean, Beatrice Rosenberg* and *Carl H. Imlay.*

Briefs of *amici curiae* were filed by *Osmond K. Fraenkel* for the National Lawyers Guild, and *Frank J. Donner, Arthur Kinoy* and *Marshall Perlin* for Begun et al.

MR. JUSTICE HARLAN delivered the opinion of the Court.

In 1913, at the age of 10 years, petitioner was brought to the United States as an immigrant from Poland. In June 1938 the United States District Court for the Eastern District of Michigan entered its order admitting him to citizenship. More than 14 years later, in December 1952, the United States brought this suit under § 338 (a) of the Nationality Act of 1940 [1] to set aside the naturalization decree, alleging that Nowak had obtained his citizenship both fraudulently and illegally. The Government filed with its complaint an "affidavit showing good cause," as required by § 338 (a). After a trial the District Court granted the relief requested by the United States on the grounds that Nowak (1) fraudulently obtained citizenship by making a false answer to a question in his Preliminary Form for Petition for Naturalization, filed in July 1937; and (2) illegally obtained citizenship, in that for a period of five years preceding his

---

[1] 54 Stat. 1137, 1158:

"It shall be the duty of the United States district attorneys for the respective districts, upon affidavit showing good cause therefor, to institute proceedings . . . for the purpose of revoking and setting aside the order admitting such person to citizenship and canceling the certificate of naturalization on the ground of fraud or on the ground that such order and certificate of naturalization were illegally procured."

naturalization he had not been "attached to the principles of the Constitution of the United States . . . ," as required by § 4 of the Nationality Act of 1906,[2] under which he was naturalized. 133 F. Supp. 191. The Court of Appeals affirmed, 238 F. 2d 282, and we granted certiorari. 353 U. S. 922. For reasons given hereafter we decide that the judgment below must be reversed.

1. *"Good Cause" Affidavit.*—Petitioner, relying on *United States* v. *Zucca,* 351 U. S. 91, contends that the District Court lacked jurisdiction over this proceeding because the Government's affidavit of "good cause" was defective, in that it was not made by one having personal knowledge of the matters contained therein. This contention must be rejected. The affiant was an attorney of the Immigration and Naturalization Service who swore that the allegations made in his affidavit were based upon facts disclosed by official records of the Naturalization Service to which he had had access. In substance the affidavit set forth the same matters upon which the District Court's later decree of denaturalization was based, and showed with adequate particularity the grounds on which the Government's suit rested. Sworn to as it was by a responsible official of the Naturalization Service, we consider that the affidavit satisfied the purpose of § 338 (a) to protect those proceeded against from ill-considered action. See *United States* v. *Zucca, supra,* at 99–100.

---

[2] Paragraph 4 of § 4 of the Act, 34 Stat. 596, 598, as amended, 8 U. S. C. (1934 ed.) § 382, provides that no alien may be admitted to citizenship unless immediately preceding his application he has resided continuously within the United States for at least five years and that during this period "he has behaved as a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States."

2. *Fraudulent Procurement.*—The finding of fraud here was based on Nowak's answer to Question 28 in the above-mentioned preliminary naturalization form, which read:

> "28. Are you a believer in anarchy? . . . Do you belong to or are you associated with any organization which teaches or advocates anarchy or the overthrow of existing government in this country? . . ."

Nowak placed "No" after each part of the question. The courts below ruled that he should have answered "Yes" to the second part because in 1937, when the form was executed, (1) Nowak was a member of the Communist Party; (2) the Party taught "the overthrow of existing government"; and (3) Nowak was aware of this Party teaching. Accordingly the charge of fraudulent procurement was sustained.

Where citizenship is at stake the Government carries the heavy burden of proving its case by " 'clear, unequivocal, and convincing' evidence which does not leave 'the issue in doubt' . . . ." *Schneiderman* v. *United States,* 320 U. S. 118, 158. "Especially is this so when the attack is made long after the time when the certificate of citizenship was granted and the citizen has meanwhile met his obligations and has committed no act of lawlessness." *Id.,* at 122–123. See also *Baumgartner* v. *United States,* 322 U. S. 665, 675. And in a case such as this it becomes our duty to scrutinize the record with the utmost care. Cf. *Dennis* v. *United States,* 341 U. S. 494, 516; *Yates* v. *United States,* 354 U. S. 298, 328.

Applying the strict standard required of the Government by *Schneiderman,* we rule that the charge of fraud was not proved: first, Question 28 on its face was not sufficiently clear to warrant the firm conclusion that when Nowak answered it in 1937 he should have known that it

called for disclosure of membership in nonanarchistic organizations advocating violent overthrow of government and, more particularly, membership in the Communist Party; second, even if the question should have been taken as calling for disclosure of membership in such organizations, as the Government claims, the evidence, as we decide below in connection with the charge of illegal procurement, was insufficient to establish that Nowak knew that the Communist Party engaged in such illegal advocacy. We deal with the first of these grounds here.

No claim is made that Nowak's answer to the first part of Question 28 was untruthful. The issue is whether, as Nowak claims, the second part of the question could reasonably have been read by him as inquiring *solely* about membership in an anarchistic organization, or whether, as the Government contends, it unambiguously called for disclosure of membership in an organization which advocates *either* anarchy or overthrow of existing government.

We think that Nowak could reasonably have interpreted Question 28 as a two-pronged inquiry relating simply to anarchy. Its first part refers solely to anarchy. Its second part, which is in direct series with the first, begins with "anarchy," and then refers to "overthrow." It is true that the two terms are used in the disjunctive, but, having regard to the maxim *ejusdem generis,* we do not think that the Government's burden can be satisfied simply by parsing the second sentence of the question according to strict rules of syntax. For the two references to "anarchy" make it not implausible to read the question in its totality as inquiring solely about anarchy. Especially is this so when it is borne in mind that Nowak answered the question in 1937, during a period when communism was much less in the public consciousness than has been the case in more recent years, and when,

accordingly, there was less reason for individuals to believe that government questionnaires were seeking information relating to Communist Party membership.[3] The fact that the Nationality Act of 1906, under which this preliminary naturalization form was issued, prohibited anarchists, but *not* Communists, from becoming American citizens, see 34 Stat. 596, 597, 598, accentuates the highly doubtful meaning of the question. We hold the second part of Question 28 too ambiguous to sustain the fraudulent procurement charge based on petitioner's answer to it.

3. *Illegal Procurement.*—As in the *Schneiderman* case, the Government here undertook to prove that Nowak, during the five years preceding his naturalization, was not "attached" to the principles of the Constitution by showing that he had been a member of the Communist Party with knowledge that the Party advocated the over-throw of the Government by force and violence. We believe that the Government has adequately proved that Nowak was a member of the Party during the pertinent five-year period. But even assuming that the evidence of the illegal advocacy of the Party was sufficient, see *Yates* v. *United States, supra,* at 319–322, and that, despite the doubts expressed in *Schneiderman* v. *United States, supra,* at 136, 154, lack of "attachment" could be

---

[3] No evidence was introduced tending to show that Nowak actually understood Question 28 as calling for disclosure of his membership in the Communist Party. The Government argues that the requisite understanding of the question should be imputed to Nowak, "an important functionary in the Party, and an intelligent man," because of the fact that for some period prior to 1937 the deportation and exclusion statutes applied to aliens "who are anarchists; aliens who believe in or advocate the overthrow by force or violence of the Government of the United States or of all forms of law." Act of October 16, 1918, 40 Stat. 1012. The gap in the Government's proof cannot be filled in such tenuous fashion, especially in view of the citizenship provisions of the Nationality Act of 1906 referred to in the text.

proved by this method, we nevertheless hold that the Government cannot prevail on this record. For we are of the opinion that it has not been established that Nowak knew of the Party's illegal advocacy.

The fact that Nowak was an active member and functionary in the Party does not of itself suffice to establish this vital link in the Government's chain of proof. See generally *Schneiderman* v. *United States, supra;* cf. *Yates* v. *United States, supra,* at 329–330. Nor is the Government's burden satisfied on the crucial issue of Nowak's awareness of the illegal aspects of the Party's program by the evidence of his attendance at "closed" Party meetings, or by the disputed evidence as to his alleged concealment of Party membership. Virtually the only testimony at the trial bearing directly on Nowak's state of mind related to three statements attributed to him by former members of the Communist Party. One testified that at the meeting at which Nowak joined the Party in 1935 he stated that it would be necessary to "destroy" capitalism in order to set up a workers' government. A second testified that about 1937 Nowak stated at a Party meeting that the Party could not rely entirely on the ballot to gain its objectives, "but that it would eventually resolve to bullets." And a third testified that in the summer of 1937, while lecturing at a Party school, Nowak said that if the Party could not gain control of labor unions through elections, "then it may be necessary to use violence to get it," and that "the goal of all this activity was to extend the Soviet system around the face of the earth."

For a number of reasons we cannot regard these fragmentary episodes as providing reliable support for the Government's case. On their face each of the statements attributed to Nowak was equivocal. Read in context, they can be taken as merely the expression of opinions or predictions about future events, rather than as advocacy

of violent action for the overthrow of government. See *Schneiderman* v. *United States, supra,* at 157–158; cf. *Yates* v. *United States, supra,* at 319–322. The record reveals that in two of these instances Nowak was not even addressing himself to political action, but rather to Party activity designed to strengthen the American labor movement, in which he was a union organizer. At no point does the record show that Nowak himself ever advocated action for violent overthrow, or that he understood that the Party advocated action to that end. In addition, the record leaves us with the distinct impression that the testimony as to these episodes was itself quite uncertain, given as it was from 17 to 19 years after the event. Indeed, some of the testimony was elicited only after persistent prodding by counsel for the Government.[4]

---

[4] The testimony of witness Eager provides an example of this: After it was established that in 1937 Eager was a member of the same Communist Party cell as Nowak, which was composed of members of the United Auto Workers, and that they attended several Party meetings together, Eager was asked what Nowak said at those meetings. Eager's reply was, "He gave an outline of what Party members should do in the plant, and that we would have to be a little more aggressive if we expected to get anywhere at that time. . . . And he said we couldn't depend entirely on ballots in this country; it was only by a militant Communist leadership in the shops, stores and factories and mines that we could expect to have a Soviet America." (Transcript, pp. 315–316.) During the course of his direct examination Eager was asked several more times about statements Nowak may have made relating to communism either at Party meetings or in private conversation. His answers were always of two types. Sometimes he substantially repeated his first account; for example, "[Nowak] said the Party policy was that members of the Party in the various unions should take an aggressive and militant leadership of the union." (Transcript, p. 321.) Or else he pleaded that he was not able to remember what Nowak said; for example, "I can't recall the exact words he said at that meeting, it is so long ago." (Transcript, p. 322.) After direct examination ended, and after a lengthy cross-examination, counsel for the Government returned to the theme on redirect and asked Eager about

Under the strict standard of proof by which this case must be judged, the record shows at best from the Government's standpoint that Nowak was an active member and functionary of the Communist Party. But this proof does not suffice to make out the Government's case, for Congress in the Nationality Act of 1940 did not make membership or holding office in the Communist Party a ground for loss of citizenship. We conclude that the Government has failed to prove its charges of fraud and lack of "attachment" against this petitioner by the "clear, unequivocal, and convincing" evidence which is required in denaturalization cases. We therefore need not consider any of the other contentions pressed by petitioner.

The judgment of the Court of Appeals is reversed and the case is remanded to the District Court for further proceedings in conformity with this opinion.

*Reversed.*

---

any statements of Nowak concerning "the role that the Communist Party should play in that union." Eager replied, "Only to the extent that he stated we should be militant and aggressive and take a leadership in our plants." (Transcript, p. 375.) A little later Eager was asked substantially the same question. After objection by Nowak's counsel on the ground that the matter had been gone into "ten times on direct examination," the District Court recognized that the question had previously been asked, but permitted the witness to answer. Eager said, "Well, I think that I have answered that question four or five times." When asked at that point if he could add anything, Eager only then submitted the answer so heavily relied on by the Government here, "The only thing I can recall him saying one night, at a meeting, that was slightly different, I guess, and yet the same question of militancy and all that, and there was political action, the question was brought up at the meeting and he told us at that time that we couldn't depend too much on the ballot to gain our objectives but that it would eventually resolve to bullets, and it was only by the same militancy of the workers in the plants that we, as leaders, would be able to establish a Soviet America." (Transcript, p. 379.)

MR. JUSTICE BURTON, MR. JUSTICE CLARK, and MR. JUSTICE WHITTAKER, dissenting.*

We join the Court in concluding that the "good cause" affidavits were sufficient. However, under the circumstances of these cases we believe that each petitioner fully understood the thrust of Question 28 as to association with or membership in any organization which teaches or advocates the overthrow of the Government. Further, we believe that the facts amply support the conclusion of both the trial court and the Court of Appeals that neither petitioner "behaved as a person . . . attached to the principles of the Constitution of the United States . . . ." We cannot join in overturning these findings of two courts, and therefore would affirm the judgments.

---

*[NOTE: This opinion applies also to No. 76, *Maisenberg* v. *United States, post,* p. 670.]