UNITED STATES of America, Plaintiff,

v.

Guss POLITES, Defendant.

No. 11820.

United States District Court
E. D. Michigan, S. D.

Nov. 19, 1958.

Frederick Kaess, U. S. Dist. Atty., Detroit, Mich., for plaintiff.

Goodman, Crockett, Eden & Robb, Detroit, Mich., for defendant.

PICARD, Chief Judge.

### Statement of Facts

Guss Polites entered the United States from Greece in 1916, filed petition for naturalization October 6, 1941, and received Certificate of Naturalization April 6, 1942. Complaint to cancel his citizenship was filed June 16, 1952, and after full hearing we ordered cancellation August 20, 1953, in accordance with opinion filed August 13, 1953 (amended February 23, 1955). Appeal therefrom was commenced, but dismissed by stipulation of counsel. The motion now under consideration informs us that petitioner in another suit in this District is contesting deportation proceedings.

More than six years after order of cancellation, August 6, 1958, Polites filed a motion for relief from judgment pursuant to Rule 60(b) (5) and (6), Fed. Rules Civ.Proc. 28 U.S.C.A.:

> "On motion and upon such terms as are just, the court may relieve a party * * * from a final judgment, * * * for the following reasons: * * * (5) * * * it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment."

claiming that the recent decisions of Nowak v. United States, 356 U.S. 660, 78 S.Ct. 955, 2 L.Ed.2d 1048 and Maisenberg v. United States, 356 U.S. 670, 78 S.Ct. 960, 2 L.Ed.2d 1056 (decided May 26, 1958) should equitably and legally control the issues in this case.

While recent decisions would not usually control unless the facts therein and applicable law were the same as confronted the court in the Polites matter, we present these pertinent facts:

Both Nowak and Maisenberg were naturalized under the Act of 1906; but Polites was naturalized under the Act of 1940. Of course this difference in fact does not control the question of law, but it is well to observe in connection there-

with that these questions were asked of Nowak and Maisenberg:

"28. Are you a believer in anarchy? * * * Do you belong to or are you associated with any organization which teaches or advocates anarchy or the overthrow of existing government in this country? * * *."

While on the other hand Polites was put under a stricter obligation. He was asked to

"* * * list memberships or activities in clubs, organizations, or societies."

to which he then or had belonged and he also answered that

"15. Within the past 5 years I *have not* been affiliated with or active in (a member of, official of, a worker for) organizations, devoted in whole or in part to influencing or furthering the political activities, public relations, or public policy of a foreign government."

Again this is not controlling of the law but is part of the background of this case since he failed to tell the truth in either instance.

### Conclusions of Law

The Nowak and Maisenberg cases, supra, which petitioner relies on, hinge upon three considerations, the first being the construction of above question 28. On page 663 of 356 U.S., on page 957 of 78 S.Ct. the Supreme Court says:

"* * * Question 28 on its face was not sufficiently clear to warrant the firm conclusion that when Nowak answered it in 1937 he should have known that it called for disclosure of membership in nonanarchistic organizations advocating violent overthrow of government * * *."

Second, on page 666 of 356 U.S., on page 958 of 78 S.Ct.:

"* * * the Nationality *Act of 1906*" (emphasis ours) "under which this preliminary naturalization form was issued, prohibited anarchists, but *not* Communists, from becoming American citizens, * * *."

and, finally, on page 666 of 356 U.S., on page 959 of 78 S.Ct. the same court said:

"* * * it has not been established that Nowak knew of the Party's illegal advocacy."

These decisions do not as contended by Polites clearly control the instant case warranting relief from judgment, if for no other reason than that the question construed is entirely different in form and content (actual knowledge of intent of communist sympathy is not required here), the applicable acts differ, and because the Act of 1940, under which Polites was naturalized *did* provide the following prohibition which did not appear in the 1906 Act

8 U.S.C. § 705, 54 Stat. 1141:[1]

"No person shall hereafter be naturalized as a citizen of the United States— * * *

"(b) Who believes in, advises, advocates, or teaches, *or who is a member of or affiliated with any organization, association, society, or group that believes in, advises, advocates, or teaches—*

"*(1) the overthrow by force or violence of the Government of the United States or of all forms of law;*" (no actual knowledge is necessary) "or

"(2) the duty, necessity, or propriety of the unlawful assaulting or killing of any officer or officers (either of specific individuals or of officers generally) of the Government of the United States or any other organized government, because of his or their official character; or

1. Now 8 U.S.C.A. § 1424(a).

**404**

"(3) the unlawful damage, injury, or destruction of property; or

"(4) sabotage." (Emphasis ours.)

Petitioner emphasizes that deportation embodies harsh punitive measures. But his deportation is being considered elsewhere while we are concerned solely with his citizenship naturalization, a privilege and obligation sought by him and bestowed by the sovereign only upon the conditions it selects.

In support of Rule 60's applicability, petitioner cites Leaks v. Myers, 27 LW 2130 and Klapprott v. United States, 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266. Neither applies. But Ackermann v. United States, 1950, 340 U.S. 193, 71 S.Ct. 209, 213, 95 L.Ed. 207 states:

"Neither the circumstances of petitioner nor his excuse for not appealing is so extraordinary as to bring him within Klapprott or Rule 60(b) (6)."

■ In this case therefore the court had the benefit of Rule 60(b)'s provisions but would not follow the Klapprott case supra, because there was no "excusable neglect" in Ackermann, but there was in Klapprott. Therefore, since petitioner abandoned his appeal, as he states, "because of the controlling decisions" we have absolutely no alternative but to follow the Ackermann decision coupled with the Sixth Circuit Court of Appeals' statement in Berryhill v. United States, 1952, 199 F.2d 217, 219 which refutes petitioner's reasoning by saying:

"It appears to be the settled rule that a change in the judicial view of the applicable law, after a final judgment, is not a basis for vacating a judgment entered before announcement of the change."

Ordinarily we would have granted petitioner's prayer, particularly under subsection (b) (5) of Rule 60, authorizing us to so do, if

"it is no longer equitable that the judgment should have prospective application;"

but in our opinion, our Court of Appeals specifically eliminates such holding where the only reason for abandoning the appeal was because of the then status of the law under the "controlling decisions."

For the reasons given petition is denied.

