**Peter CHAUNT, Defendant-Appellant,**

v.

**UNITED STATES of America, Plaintiff-Appellee.**

**No. 15843.**

United States Court of Appeals Ninth Circuit.

Oct. 11, 1961.

John W. Porter, San Diego, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Richard A. Lavine, Asst. U. S. Atty., Chief of Civil Division, Los Angeles, Cal., Arline M. Rossi, Asst. U. S. Atty., Donald A. Fareed, Asst. U. S. Atty., Chief of Civil Division, and James R. Dooley, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before STEPHENS, MARIS and BARNES, Circuit Judges.

MARIS, Circuit Judge.

This appeal, which is before us for the second time, is from a judgment entered in the United States District Court for the Southern District of California revoking an order admitting the defendant Peter Chaunt to citizenship. The district court based its judgment upon the grounds that the defendant's naturalization order had been secured by fraud in that he had falsely concealed material facts in respect to his prior arrests; that he had misrepresented his attachment to the principles of the Constitution and allegiance to the United States, and that he had concealed his communist belief and membership in the Communist Party and in our previous decision we approved the finding of the district court that revocation of defendant's citizenship was warranted on the ground that he had fraudulently concealed his prior arrests. Accordingly we affirmed the judgment without reaching for consideration the other issues raised on the appeal. 9 Cir., 270 F.2d 179. On certiorari, the Supreme Court disagreed with our view that the defendant's concealment of his prior arrests was a sufficient basis for the district court's judgment. On the contrary, the Supreme Court concluded that the nature of the particular arrests involved did not reflect on the character of the defendant, and, hence,

his failure to reveal them in his petition for naturalization was not a sufficient reason to revoke his citizenship. The Supreme Court, therefore, reversed our judgment and remanded the cause to us for consideration of the other issues which were raised on the appeal but upon which we had not passed. 364 U.S. 350, 81 S.Ct. 147, 5 L.Ed.2d 120. Reargument has accordingly been had and we have given full consideration to these other issues.

The defendant contends that the evidence does not support the district court's findings as to the defendant's non-attachment to the principles of the Constitution and of misrepresentation as to his communist belief and membership in the Communist Party. The Government concedes that the district court's findings of misrepresentation by the defendant of his attachment to the principles of the Constitution and of his allegiance to the United States cannot stand in the light of Nowak v. United States, 1958, 356 U.S. 660, 78 S.Ct. 955, 2 L.Ed. 2d 1048, and Maisenberg v. United States, 1958, 356 U.S. 670, 78 S.Ct. 960, 2 L.Ed.2d 1056, both of which cases were decided by the Supreme Court after the district court entered its judgment in the present case. But the Government argues that the district court correctly found that the defendant intentionally misrepresented his communist belief and membership in the Communist Party and that this was a sufficient basis for its judgment of denaturalization.

The defendant, a native of Hungary, entered this country in 1921 at the age of 22. The record is replete with uncontradicted evidence that from at least 1928 until 1942 the defendant was engaged in various kinds of communist activities. In 1928 and 1929 he worked on a communist daily newspaper and with the Young Communist League in Akron, Ohio. During 1930 he was district organizer for the Communist Party in Connecticut. He was a district organizer of the Communist Party in central and western New York and western Pennsylvania in 1930 and 1931. In 1930

he wrote an article on "Offensive Strategy" in the Daily Worker, a communist newspaper. In 1931 he taught a course in the basic principles of Leninism at a Communist Party Training School and signed Communist Party membership books as district organizer. He became district organizer of the Communist Party in the St. Louis area in or about the year 1933, continuing until 1936 or later. He was seen at national Communist Party headquarters in New York in 1937 or 1938. From 1939 to 1942 the defendant was the assistant school director of the training school of the International Workers Order. This was a fraternal benefit organization, having a membership of about 160,000, controlled, directed and dominated by the Communist Party. In 1945 the defendant attended a Communist Party meeting in Cleveland as the district representative of Ohio. He was at that time Nationality Group Secretary in the Cleveland district.

In November 1939 the defendant filed an application for a certificate of arrival and preliminary form of petition of naturalization with the Immigration and Naturalization Service in New York. He was orally examined under oath on June 27, 1940 as to questions appearing therein as well as to supplementary questions. A formal petition for naturalization was thereupon filed. His petition was granted and on November 28, 1940, the defendant became a naturalized citizen by decree of the United States District Court for the Eastern District of New York. In 1953 the Government instituted the present suit for denaturalization under § 340(a) of the Immigration and Naturalization Act of 1952, 8 U.S.C.A. § 1451(a).

It is the Government's contention that the defendant untruthfully answered two questions asked during his interview by Naturalization Examiner Derrenger on June 27, 1940. The first question was answered under the following circumstances:

Examiner Derrenger testified that he had no recollection of the particular examination but that it was his

custom and practice to inquire about a petitioner's attachment to the principles of the Constitution. He testified that "I would ask the petitioner whether he believed in Nazism, Communism or Fascism". If a petitioner answered in the affirmative, Derrenger would write on the space on the form entitled "Result of Examination" the letters "NAC" which meant "not attached to the Constitution" but if the answer was in the negative then Derrenger would write "AC" which meant "Attached to the Constitution". The letters "AC" appear on the defendant's form which indicated to Derrenger that the defendant was questioned concerning his attachment to the Constitution and that the defendant's answer indicated that he was attached to the principles of the Constitution. The Government contends that the defendant's answer in the negative to this question was untruthful because it is clear under the evidence that the defendant believed in communism and concealed and misrepresented his belief. Without deciding whether evidence as imprecise as that of Derrenger could be regarded as sufficiently clear, unequivocal and convincing to support a judgment of denaturalization, Schneiderman v. United States, 1943, 320 U.S. 118, 158, 63 S.Ct. 1333, 87 L.Ed. 1796, we think that this contention is no longer open to the Government. For the question was asked solely in order to ascertain whether or not the petitioner was attached to the principles of the Constitution. Since the Government has been compelled, by reason of the rulings in the Nowak and Maisenberg cases, to abandon misrepresentation of attachment and allegiance as a basis for supporting the judgment of denaturalization this untruthful answer cannot be relied upon to sustain that judgment.

We turn then to the remaining issue in the case, namely, whether the defendant misrepresented his membership in the Communist Party. This involves the defendant's answer to the other question relied on by the Government. As to this Derrenger testified that it was his practice to ask a petitioner to state all the organizations to which he belonged at which time Derrenger would enter the answer on the form and make sure that the question was answered fully. On the space under "Result of Examination" on the defendant's form Derrenger typed "Organization-Fraternal Benefit Society of Internation Workers Order, where applicant is employed—no others. cd". This entry indicated to Derrenger that the defendant had answered that he belonged to that one organization and to no others. Derrenger testified that if a petitioner had answered that he belonged to the Communist Party such answer would have been entered on the form in this space. It appears that complete reliance was placed by the Immigration and Naturalization Service upon a petitioner's answers and no independent investigation was conducted unless prompted by an answer. The written and oral answers given by the defendant upon his examination on his petition for naturalization did not prompt any investigation nor raise any question which would have caused his case to be reported for investigation.

■ The defendant urges that the Government has not produced evidence to prove his membership in the Communist Party at the critical date, June 1940. He concedes, however, that the evidence shows that from the early 1930s to 1936 he "was an open, publicly-avowed district organizer of the Communist Party" and that his Communist Party membership is also clear in 1945 but he contends that there is a hiatus in the evidence for the nine years from 1936 to 1945. We do not agree. The pattern of communist activity which the defendant followed from 1928 to 1936 was followed consistently through the years 1939 and 1940 when he admittedly was employed as an educator in a Communist Party dominated organization. His activity in the training school of the International Workers Order was not inconsistent with his membership in the Communist Party. Furthermore, the defendant's own evidence has demonstrated that he did not hesitate to lie to the Immigration Service.

He himself introduced in evidence a statement he made in 1932 to Immigration officials when he was arrested in a general round-up of aliens in Buffalo, New York. Upon that occasion he informed the officials that he was born in San Francisco, California, and that his birth record had been destroyed in the San Francisco earthquake and fire. It was on the strength of this statement that he was released at that time. Accordingly we conclude that the district court did not err in finding, from the evidence, that the defendant was a member of the Communist Party about the time he petitioned for naturalization.

■ It is well settled, however, that mere membership and activity in the Communist Party are not, under the Immigration and Naturalization Act of 1906, 34 Stat. 596, as amended, 45 Stat. 1512, sufficient to warrant denaturalization. Schneiderman v. United States, 1943, 320 U.S. 118, 63 S.Ct. 1333, 87 L. Ed. 1796; Nowak v. United States, 1958, 356 U.S. 660, 78 S.Ct. 955, 2 L.Ed.2d 1048; Maisenberg v. United States, 1958, 356 U.S. 670, 78 S.Ct. 960, 2 L.Ed. 2d 1056. But failure to give honest answers to relevant questions during an examination for citizenship may be the basis for denaturalization. Costello v. United States, 1961, 365 U.S. 265, 81 S.Ct. 534, 5 L.Ed.2d 551. The Supreme Court in the present case has restated this requirement, as follows [364 U.S. 352–353, 81 S.Ct. 147, 149]:

"Acquisition of American citizenship is a solemn affair. Full and truthful response to all relevant questions required by the naturalization procedure is, of course, to be exacted, and temporizing with the truth must be vigorously discouraged. Failure to give frank, honest, and unequivocal answers to the court when one seeks naturalization is a serious matter. Complete replies are essential so that the qualifications of the applicant or his lack of them may be ascertained. Suppressed or concealed facts, if known, might in and of themselves justify denial of citizenship. Or disclosure of the true facts might have led to the discovery of other facts which would justify denial of citizenship."

■ The case turns, therefore, on the answer to the question whether the defendant concealed his Communist Party membership and thereby blocked further inquiry by the Government when he answered that he belonged to only one organization, the International Workers Order, and to no others. We are satisfied that this question has been answered for us by the Supreme Court in this very case. For in the opinion of the Court it is said [364 U.S. 354–355, 81 S.Ct. 147, 150]:

" * * * In this case, however, we are asked to base materiality on the tenuous line of investigation that might have led from the arrests to the alleged communistic affiliations, when as a matter of fact petitioner in this same application disclosed that he was an employee and member of the International Workers' Order, which is said to be controlled by the Communist Party. In connection with petitioner's denial of such affiliations, respondent argues that since it was testified that the IWO was an organization controlled and dominated by the Communist Party, it is reasonable to infer that petitioner had those affiliations at the time of the application. But by the same token it would seem that a much less tenuous and speculative nexus with the Communist Party, if it be such, was thereby disclosed and was available for further investigation if it had been deemed appropriate at the time. Cf. United States v. Anastasio, 3 Cir., 226 F.2d 912. It is said that IWO did not become tainted with Communist control until 1941. We read the record differently. If the Government's case is made out, that taint extended back at least as far as 1939."

■ We think that the Supreme Court here clearly ruled that the record established that the International Work-

ers Order was known to be a communist controlled organization in 1940 and that the defendant's disclosure of his membership in and employment by that organization was, therefore, a sufficient disclosure of his communist affiliations to put the Government on inquiry and thus avoid the charge of fraudulent concealment. Three dissenting justices read the record differently as to whether the International Workers Order was known by the Government to be communist dominated in 1940 and so might we if we were free to do so. But since the Supreme Court has held in this case that the defendant made a sufficient disclosure of his communist affiliations to the Naturalization Examiner we regard it as our duty in carrying out the mandate of that court to follow and apply its determination as the law of the case, Thompson v. Maxwell Land Grant Co., 1897, 168 U.S. 451, 456, 18 S.Ct. 121, 42 L.Ed. 439. We accordingly overrule the Government's contention that the defendant was guilty of fraud in procuring his naturalization by failing to disclose his Communist Party membership.

The judgment of the district court will be reversed.