John Cyril **HELLMAN**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 16187.

United States Court of Appeals Ninth Circuit.

Dec. 29, 1961.

Rehearing Denied Feb. 14, 1962.

During oral argument in this court opposing counsel joined in the suggestion that this appeal not be taken under submission until the Supreme Court had rendered its decision in Scales v. United States, then pending in that court. We accepted this suggestion. Scales has now been decided and rehearing has been denied. 367 U.S. 203, 81 S.Ct. 1469, 6 L.Ed.2d 782. Supplemental briefs requested by this court were thereafter filed.

In view of the decision in Scales, appellant no longer presses two of the arguments which he originally advanced in this court, namely: that the membership clause of the Smith Act violates the First Amendment of the Constitution, and that the membership clause was repealed by section 4(f) of the Internal Security Act of 1950, 50 U.S.C.A. § 783(f).

He does, however, renew his remaining arguments, although some are recast or expanded to take account of pronouncements contained in the Scales opinion and in Noto v. United States, 367 U.S. 290, 81 S.Ct. 1517, 6 L.Ed.2d 836, decided the same day.

Robert A. Poore and Charles L. Zimmerman, Butte, Mont., for appellant.

Moody Brickett, U. S. Atty., Butte, Mont., J. Walter Yeagley, Asst. Atty. Gen., Kevin T. Maroney, Carol Mary Brennan, Attorneys, Dept. of Justice, Washington, D. C., for appellee.

Before STEPHENS and HAMLEY, Circuit Judges, and ROSS, District Judge.

HAMLEY, Circuit Judge.

This is an appeal from a judgment of conviction after a jury trial under an indictment based upon the membership clause of the Smith Act, 18 U.S.C.A. § 2385, third paragraph.[1]

One of the contentions which appellant still urges is that the evidence is insufficient to support the conviction.

Scales, at pages 220–221, 81 S. Ct. 1469, teaches that two elements must be proven to convict under the membership clause: (1) that a society, group, or assembly of persons (here the Communist Party) advocated the violent overthrow of the Government, in the sense of present advocacy to action to accomplish that end as soon as circumstances were propitious; and (2) that defendant was an active member of that society, group or assembly of persons (and not merely a nominal, passive, in-

1. The third paragraph of section 2385, with the membership clause shown in boldface, reads:
   "Whoever organizes or helps or attempts to organize any society, group, or assembly of persons who teach, advocate, or encourage the overthrow or destruction of any such government [government of the United States or the government of any State, Territory, District or Possession thereof, or the government of any political subdivision therein] by force or violence; **or becomes or is a member of, or affiliates with, any such society, group, or assembly of persons, knowing the purposes thereof— * * * *"**.

active or purely technical member) with knowledge of the organization's illegal advocacy and a specific intent to bring about violent overthrow of the Government as speedily as circumstances would permit.

Appellant challenges the sufficiency of the evidence with respect to both of these elements. With respect to the first element he argues that the Communist Party was not proved to have been a party dedicated to the overthrow of the Government by force and violence. With regard to the second element appellant argues that it was not proved that he was an "active" member of the Party in the sense intended by the Smith Act, or that he had a specific intent to bring about violent overthrow of the Government as speedily as circumstances would permit.

We turn immediately to a consideration of the sufficiency of the evidence as to Hellman's illegal intent. If this was not proved the conviction cannot stand however strong the proof may be that he was an active and knowledgeable member of an organization which advocated the violent overthrow of the Government.

■■ On the question of the sufficiency of the evidence to support a conviction the evidence is to be considered in the light most favorable to the Government. Noto v. United States, 367 U.S. 290, 296, 81 S.Ct. 1517, 6 L.Ed.2d 836. It is to be borne in mind, however, that Smith Act offenses require strict standards of proof. Scales v. United States, 367 U.S. 203, at 232, 81 S.Ct. 1469. With specific reference to the factor of intent, it is said in Scales, at page 229, 81 S.Ct. 1469, that there must be "clear proof." And in Noto, at pages 299–300, 81 S.Ct. at page 1522, this view is further amplified as follows:

> " * * * this element of the membership crime, like its others must be judged *strictissimi juris* for otherwise there is a danger that one in sympathy with the legitimate aims of such an organization, but not specifically intending to accomplish them by resort to violence, might be punished for his adherence to lawful and constitutionally protected purposes, * * * which he does not necessarily share."

We assume, for the purpose of considering the sufficiency of the evidence as to intent, that the record supports the jury finding that, during the period covered by the indictment, the Communist Party advocated the violent overthrow of the Government in the sense required by the Smith Act, and that Hellman was an active member of that Party, with knowledge of the Party's illegal advocacy.

It may be suggested at the outset that we have thus assumed facts which would warrant a jury inference that Hellman had the requisite illegal intent.

This would be permissible if Hellman's activity was of a character which is consonant only with an illegal intent on his part, a fact not assumed above, but to be separately discussed below. Such an inference would also be permissible if the Party was shown on this record to have only illegal aims.

But here, as in Scales, at page 229, 81 S.Ct. 1469, the Party was shown to have legal aims as well as the assumed illegal aims. Thus an active member with knowledge of both the legal and illegal aims might personally intend to effectuate only the Party's legal objectives, such as election of members to public office, enactment of legislation favored by the Party, and the like.

No account would be taken of this possibility of an entirely innocent intent if it were permissible to draw an inference of personal illegal intent from the facts of active membership and knowledge of the illegal aims of the Party. Such an inference is not a permissible one especially where, as here, the result of a mistaken finding would be to impair legitimate political expression or association. In the light of these considerations the Supreme Court, in Scales, at page 229, 81 S.Ct. 1469, has established the requirement that illegal intent

be established by "clear proof." See, also, the above-quoted excerpt from the opinion in Noto v. United States. We hold that this standard of proof requires a more positive factual base than that which we have been discussing.

█ If Hellman's activity as a knowledgeable member of the Party was of a kind which is explainable on no other basis than that he personally intended to bring about the overthrow of the Government as speedily as circumstances would permit, personal illegal intent could properly be inferred. Examples of activity falling in the latter category would be the collection of weapons and ammunition in substantial quantities, or the conducting of field surveys to ascertain ways and means of sabotaging public utility or defense plants.

█ Hellman was an exceedingly active member of the Party. He served as an organizer for the states of Montana and Idaho. He regularly attended state and regional meetings. He taught extensively in Party schools, recruited members into the Party, organized youth camps, participated in the Party underground and distributed Party literature. The evidence shows that Hellman also sold subscriptions to Party publications, solicited contributions for the Party, requested persons to attend Party meetings, and concealed his own membership in the Party by signing a non-Communist affidavit.

But however sufficient these facts may have been to prove that Hellman was an active member of the Party, (and we have assumed that they were sufficient for that purpose) they do not give rise to a reasonable inference that he specifically intended to overthrow the Government by force and violence at the first propitious moment. Considering these facts alone, or in conjunction with his knowledge of the Party's illegal advocacy, the activity portrayed is explainable on the basis that he intended to bring about the Party's ultimate goals through peaceable means.

The proscribed personal intent may be inferred from substantial evidence that a defendant personally advocated forcible overthrow of the Government as speedily as circumstances would permit.[2]

But nowhere in the evidence which the Government calls to our attention, or in the entire record which we have independently examined, do we find testimony that Hellman personally advocated violent overthrow of the Government. In all of his references to and discussions of force and violence Hellman assumed only the role of teacher of the Party line. Arthur Moralez, the Government witness who had been closer to Hellman than any other witness, having travelled about Montana and Idaho with Hellman for a period of years, in effect admitted that he had never heard Hellman engage in personal advocacy of this kind.[3]

The evidence in this regard is in striking contrast with that which was produced in Scales, where its sufficiency to

2. Hellman contends that personal illegal intent can be shown only in this way. Bearing in mind that we are here concerned with the membership clause rather than the advocacy clause of the Smith Act, we do not agree. See Scales, at page 227, 81 S.Ct. 1469.

3. "Q. And they wanted you [Moralez] to sign an affidavit that you had never heard Mr. Hellman state that he advocated the overthrow of the Government by force, and that there was another affidavit that you had never heard anyone in the Party advocate overthrowing the Government by force, and I believe you stated that you wouldn't sign the affidavit. Now, at that time and place, with Mr. Hellman there and Mr. Coyle there, isn't it a fact, Mr. Moralez, that you also stated that you never had heard Mr. Hellman make any such statement, or any person in the Party, but that you still didn't want to sign it because merely it was in writing, isn't that correct?

"A. [Moralez] I don't recall making the statement.

"Q. Well, do you deny that you told Mr. Coyle that the affidavit was true as to Mr. Hellman but that you weren't going to sign it?

"A. I will not deny it; I may have said it"

support a finding of illegal intent was upheld. In that case there was testimony that the defendant repeatedly made personal overtures to individuals in terms which clearly reflected and were intended to reflect the defendant's personal views in favor of violent overthrow of the Government at the first opportunity.

Absent evidentiary support for a finding of such personal advocacy on Hellman's part, the only other way in which his alleged illegal intent could be proved would be through evidence that he urged and encouraged contemporary action, legal or illegal, which could only have been motivated by an intent to accomplish violent overthrow of the Government.

On several occasions Hellman personally urged Party members and students to immediately undertake action. Among other things he told students to place themselves in positions of leadership. He taught that the students must advance the material conditions necessary to produce the crisis which the Communists need to succeed. He told them, "The people have been on the ebb and now we must arrange to flow forward." He asked Party students to participate in the 1952 elections in order to "expose them," and to show that a basic change could not be achieved through elections. Hellman proposed that the State Board organize an educational program which would stress "the development of mass agitation and propaganda of all types." He prepared a plan to accomplish the infiltration of the Farmer's Union in an attempt to dominate it.

In our opinion, none of these encouragements to action, or all of them together, warrants a finding that Hellman had such an intent. Coming from one who had not been shown to have personally advocated violent overthrow of the Government they are equivocal in nature. They are as explainable on the theory that Hellman sought to effectuate only the Party's legal objectives as on the premise that he personally intended violent overthrow of the Government.

The most damaging action attributed to Hellman in the Government's brief was his statement that students must advance the material conditions necessary for the revolution. But when this statement is considered in context it appears that Hellman was using one of the Party "classics," written by Lenin, and was doing no more than outlining the Party program.

Here again, the strict standards of proof which the Supreme Court has prescribed, have not been met. Compare Nowak v. United States, 356 U.S. 660, 78 S.Ct. 955, 2 L.Ed.2d 1048.

For all of the reasons stated above, we conclude that the evidence was insufficient to support the indispensable finding that, during the period covered by the indictment, Hellman had the specific intent to bring about the violent overthrow of the Government as speedily as circumstances would permit.

The judgment is therefore reversed with directions to dismiss the action.