**UNITED STATES of America, Appellant,**

v.

**Hyman STROMBERG, Appellee.**

**No. 15572.**

United States Court of Appeals
Fifth Circuit.

Nov. 15, 1955.

904

J. Edward Worton, Asst. U. S. Atty., James L. Guilmartin, U. S. Atty., Miami, Fla., for appellant.

William A. Gray, Philadelphia, Pa., Morton Rothenberg, Miami Beach, Fla., Walter Stein, Philadelphia, Pa., for appellee.

Before RIVES, JONES and BROWN, Circuit Judges.

RIVES, Circuit Judge.

█ Both parties originally treated this appeal in a denaturalization proceeding as being from a final decision, and, hence, within this Court's jurisdiction. 28 U.S.C.A. § 1291. Upon oral argument, the Court suggested that, if the notice of appeal were followed literally, the appeal was from the order denying plaintiff's motion under Rules 52(b) and 59(a), Federal Rules of Civil Procedure, 28 U.S.C.A.[1] The motion had been timely filed, and, under Rule 73(a), Federal Rules of Civil Procedure, the time for appeal from the final judgment had not expired when the notice was filed. Even under such circumstances, the Eighth Circuit has held that an appeal expressed to be from the order denying the motion cannot be considered as an appeal from the final judgment. United States v. Muschany, 8 Cir., 156 F.2d 196, 197; St. Lukes Hospital v. Melin, 8 Cir., 172 F.2d 532, 533; see also, Long v. Union Pacific Railroad Co., 10 Cir., 206 F.2d 829, 830. This Circuit is committed to the more liberal rule that, where it is obvious that the overriding intent was effectively to appeal, we are justified in treating the appeal as from the final judgment. Atlantic Coast Line R. Co. v. Mims, 5 Cir., 199 F.2d 582, 583, and cases there cited;

---

1. "Notice is hereby given that the United States of America, plaintiff herein, hereby appeals to the United States Court of Appeals for the Fifth Circuit from the order entered October 7, 1954, by the Honorable John W. Holland, Judge of the United States District Court, denying plaintiff's motion under Rules 52(b) and 59(a), Federal Rules of Civil Procedure, filed July 26, 1954."

see also, Sobel v. Diatz, 88 U.S.App.D.C. 329, 189 F.2d 26, 27; Greenwood v. Greenwood, 3 Cir., 224 F.2d 318, 319.[2]

Stromberg was born in Russia in 1903. With his parents he came to the United States in 1910, and has resided here since. In a New York court in 1923, he was found guilty, after a plea of guilty, of an attempt to commit third degree burglary, a crime involving moral turpitude. In December, 1932, he left the United States on an eight-day trip to Cuba, returning to Miami, Florida by plane on January 4, 1933. On September 6, 1945, he was admitted to citizenship.

The original complaint was filed September 17, 1952, pursuant to § 338 of the Nationality Act of 1940, 54 Stat. 1158–1159, § 738 of old Title 8, U.S.C.A. It alleged by way of conclusion that Stromberg's naturalization was "illegal and fraudulently procured", but the facts set forth all related to fraud in making false statements in support of his petition for naturalization and in concealing the fact that he was engaged in an unlawful occupation, namely that of bookmaking.

The Nationality Act of 1940 was superseded on December 24, 1952 by the McCarran Act, June 27, 1952, c. 477, Title III, Chap. 2, § 340, 66 Stat. 260, 8 U.S.C.A. § 1451. Section 338(a) of the Act of 1940 had provided that the order admitting a person to citizenship might be revoked and set aside and the certificate of naturalization cancelled *"on the ground of fraud or on the ground that such order and certificate of naturalization were illegally procured."* Section 340(a) of the McCarran Act changed the grounds to read, *"on the ground that such order and certificate of naturalization were procured by concealment*

*of a material fact or by willful misrepresentation"*. On November 9, 1953, months after the McCarran Act had become effective, the complaint was amended so as to charge that, in the light of Stromberg's conviction in 1923 of a crime involving moral turpitude, he could not have lawfully resided in the United States after his return from Cuba on January 4, 1933, because he was then subject to the excluding provisions of the Immigration Act of 1917, 39 Stat. 875–878, which provides:

"The following classes of aliens shall be excluded from admission into the United States: * * * Persons who have been convicted of or admit having committed a felony or other crime or misdemeanor involving moral turpitude: * * *."

The district court, in its findings of fact, held that the Government had failed to carry its burden of proof to show the element of fraud in the various misstatements of fact by Stromberg, and that finding is not questioned on appeal. The sole insistence of the Government here is that the certificate of naturalization was illegally procured and should be cancelled because Stromberg lacked the essential prerequisite of lawful residence within the United States at the time his certificate of naturalization was issued. "Illegal" procurement was a sufficient ground for revocation under the 1940 Act,[3] but not under the McCarran Act. Decision of the appeal turns, therefore, upon whether the grounds of revocation stated in the 1940 Act, or those stated in the McCarran Act, are applicable.

Section 340(i) of the McCarran Act, 8 U.S.C.A. § 1451(i), provides:

"(i) The provisions of this section shall apply not only to any nat-

---

**2.** The Per Curiam opinion in American Fire & Casualty Co. v. Allison, 5 Cir., 189 F.2d 255, is not to the contrary, for an examination of the record in that case reveals that the motion was not timely filed. That was also true in Lewis v. Carver, 5 Cir., 223 F.2d 867.

**3.** See Tutun v. United States, 270 U.S. 568, 578, 46 S.Ct. 425, 70 L.Ed. 738; Maney v. United States, 278 U.S. 17, 22, 49 S.Ct. 15, 73 L.Ed. 156; Schneiderman v. United States, 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796.

uralization granted and to certificates of naturalization and citizenship issued under the provisions of this subchapter, but to any naturalization heretofore granted by any court, and to all certificates of naturalization and citizenship which may have been issued heretofore by any court or by the Commissioner based upon naturalization granted by any court, or by a designated representative of the Commissioner under the provisions of section 702 of the Nationality Act of 1940, as amended, or by such designated representative under any other act."

On the other hand, Section 405(a) of the McCarran Act, 8 U.S.C.A. § 1101 note,[4] provides in part:

"'Nothing contained in this Act, unless otherwise specifically provided therein, shall * * * affect any prosecution, suit, action, or proceedings, civil or criminal, brought, or any status, condition, right in process of acquisition, act, thing, liability, obligation, or matter, civil or criminal, done or existing, at the time this Act shall take effect; but as to all such prosecutions, suits, actions, proceedings, statutes, [sic] conditions, rights, acts, things, liabilities, obligations, or matters the statutes or parts of statutes repealed by this Act are, unless otherwise specifically provided therein, hereby continued in force and effect.'"

Appellant's position is two-fold: first, that the pending action, filed September 17, 1952 under the 1940 Act, was preserved by the savings clause just quoted, and that, under Rule 15(c) of the Federal Rules of Civil Procedure,[5] the amendment to the complaint, though filed after the effective date of the McCarran Act, related back to the date of the original complaint; second, that the liability or cause of action of illegal procurement was preserved by the savings clause.

■■ No doubt, the savings clause preserves pending actions, but under Rule 15(c), F.R.C.P. (footnote 2) does the amendment relate back to the original complaint? Professor Moore correctly states that, "While 'relation back' is generally applied only with reference to the statute of limitations, the concept may also find application in other contexts." 3 Moore's Federal Practice, 2d ed., Para. 15.15, p. 855; see also, N. L. R. B. v. Atlanta Metallic Casket Co., 5 Cir., 205 F.2d 931, 936; 41 Am.Jur., Pleading, § 315. It is questionable whether the doctrine of "relation back" should be applied with the same liberality when it will deprive a party against whom the amendment is made of a substantial right, or impose upon such party a serious liability, as when its purpose is simply to lift the bar of the statute of limitations. See 71 C.J.S., Pleading, § 320(b).

"A denaturalization suit is not a criminal proceeding. But neither is it an ordinary civil action since it involves an important adjudication of status. Consequently we think the Government should be limited, as in a criminal proceeding, to the matters charged in its complaint." Schneiderman v. United States, 320 U.S. 118, 160, 63 S.Ct. 1333, 1353, 87 L.Ed. 1796.

It may be noted that an information in a criminal case may be amended only "if substantial rights of the defendant are not prejudiced." Rule 7(e), Federal Rules of Criminal Procedure, 18 U.S.C.A. In any event, we think the words "conduct, transaction, or occurrence", as

---

4. Construed in respects not here pertinent in United States v. Menasche, 348 U.S. 528, 75 S.Ct. 513, and Shomberg v. United States, 348 U.S. 540, 75 S.Ct. 509.

5. "(c) *Relation Back of Amendments.* Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

used in Rule 15(c), supra, have reference to the general fact situation rather than to the technical "claim", a word used earlier in the rule. See 3 Moore's Federal Practice, 2d ed., Para. 15.15, p. 852. It seems to us that the "conduct, transaction, or occurrence" set forth in the original complaint had to do with the false statements, fraud or concealment at the time of naturalization in 1945, and not with Stromberg's 1923 conviction and his departure from and re-entry into the United States in 1932–1933. We hold, therefore, that the amendment did not relate back to the original complaint so as to preserve illegal procurement as a ground of revocation of citizenship.

■■ When a law conferring jurisdiction is repealed without any reservation of jurisdiction over pending cases, all pending cases fall with the law. Bruner v. United States, 343 U.S. 112, 115, 72 S.Ct. 581, 96 L.Ed. 786. A fortiori, a liability, cause of action, or claim not yet sued on, must fall with repeal unless saved. The savings clause, § 405(a) of the McCarran Act, heretofore quoted in pertinent part continues in force and effect "liabilities * * * unless otherwise specifically provided" in said Act. Section 340(i) of said Act, also heretofore quoted, does specifically provide that said section, which includes the grounds of denaturalization, shall apply to naturalizations theretofore granted and certificates of naturalization theretofore issued. The precise issue was decided against the Government's contention in a well reasoned opinion by District Judge Aldrich in United States v. Harajovic, D.C.Mass., 125 F.Supp. 659, 660, followed by other district courts, United States v. Shinkevich, D.C.E.D.Pa., 131 F.Supp. 547, 548; United States v. Chandler, D.C.Md., 132 F.Supp. 650, 656.[6] We hold, therefore, that, after the effective date of the McCarran Act, as to actions not then pending, illegal procurement was not continued as a ground for denaturalization.

The judgment is therefore

Affirmed.

---

6. Some unreported cases are in accord, and some not. In accord: United States v. Davis Diamond, C.A. 17412, and United States v. Freeda Diamond, C.A. 17413, both D.C.S.D.Cal., May 31, 1955. Contra: United States v. Leo Fisher, D.C. N.D.Ill., No. 54C614, May 2, 1955; United States v. Title, D.C.S.D.Cal., 132 F. Supp. 185; and United States v. Marco Li Mandri, D.C.S.D.Cal., C.A. 17521, July 21, 1955.