**UNITED STATES of America,**
**Plaintiff,**

v.

**Angelo MELI, Defendant.**
**Civ. A. No. 12352.**

United States District Court
E. D. Michigan, S. D.

Dec. 24, 1957.

Fred W. Kaess, U. S. Atty., Dwight K. Hamborsky, Asst. U. S. Atty., Detroit, Mich., for plaintiff.

Joseph W. Louisell, Harry Kobel, Detroit, Mich., for defendant.

LEVIN, District Judge.

This is an action to revoke the citizenship of Angelo Meli, under Section 338 (a) of the Nationality Act of 1940, 54 Stat. 1158, Section 738(a) U.S.C. Title 8 *. Meli, a native of Italy, was naturalized in the United States District Court for the Eastern District of New York on July 30, 1929. The complaint contains numerous allegations that the defendant's citizenship was fraudulently and illegally obtained, but the Government in its brief has abandoned all but the following grounds for revocation:

(1) That the defendant fraudulently obtained citizenship by concealing the fact that he had previously filed two prior petitions for naturalization.

(2) That the defendant fraudulently obtained citizenship by concealing his criminal record.

(3) That since the defendant fraudulently concealed the filing of prior petitions and his criminal record, he was not a person of good moral character eligible for citizenship.

"Nowhere in the world today is the right of citizenship of greater worth to an individual than it is in this country." Schneiderman v. United States, 320 U.S. 118, 122, 63 S.Ct. 1333, 1335, 87 L.Ed. 1796. " * * * denaturalization, like deportation, may result in the loss 'of all that makes life worth living.'" Knauer v. United States, 328 U.S. 654, 659, 66 S.Ct. 1304, 1307, 90 L.Ed. 1500. These truths led the Court to lay down the rule that "the facts and the law should be construed as far as is reasonably possible in favor of the citizen" and require that the grounds for revocation of citizenship must be based upon " 'clear, unequivocal, and convincing' evidence which does not leave the issue in doubt." Schneiderman v. United States, 320 U.S. 118, 122, 135, 63 S.Ct. 1333, 1335, 1341, 87 L.Ed. 1796. See, also, Baumgartner v. United States, 322 U.S. 665, 64 S.Ct. 1240, 88 L.Ed. 1525.

The defendant was born in Italy in 1897 and has continually resided in the United States since 1913 and has been a citizen since 1929. He has been married to a native American citizen since 1924 and all four of his children were born in this country. His older son served honorably in the United States Armed Forces during World War II. His younger son recently sacrificed his life in the military service of his country while performing an act of heroism, leaving a widow and three children now cared for by the defendant.

In relating this family background and the implications of hardship in the event the petition for denaturalization is granted, I am not unmindful of the mandate upon me to revoke defendant's citizenship if the Government dem-

---

* Now 8 U.S.C.A. § 1451.

onstrates by appropriate proof that he obtained his naturalization fraudulently or illegally, as alleged. Corrado v. United States, 6 Cir., 227 F.2d 780; United States v. Montalbano (United States v. Genovese), 3 Cir., 236 F.2d 757. Thus the crucial question is whether the Government has proved, by clear, unequivocal and convincing evidence, the alleged fraud or illegality. These are the facts:

On September 19, 1922, the defendant, who was then a resident of Detroit, Michigan, filed a petition for naturalization in the Circuit Court of Wayne County, Michigan. He failed to prosecute this petition and on June 14, 1923, it was dismissed for that reason without a hearing on the merits. The defendant, on March 31, 1924, again petitioned for naturalization in the same court. On April 18, 1925, because of the defendant's failure to prosecute, this petition was also dismissed, again without a hearing on the merits.

The defendant moved to Brooklyn, New York, in March 1927, and took employment as a construction laborer. On April 4, 1929, he petitioned for naturalization in the United States District Court for the Eastern District of New York, and this petition was granted on July 30, 1929.

It is alleged that the defendant concealed his prior applications for citizenship because of the following entry on the petition:

"Tenth. I have not heretofore made petition for citizenship to any court. (X madeX petition foX citizenship Xo the ———— Court of ————."

The x's represent the typing of an Immigration Service typist superimposed on the printed form. The entire petition was prepared by the typist from information furnished on other papers. This entry is no convincing proof of fraud. Granting that the defendant read the petition, the meaning of the superimposed x's is hardly clear on its face and it would be hazardous, indeed, to assume it was clear to an immigrant layman with a second-grade education who was handed a typewritten form to sign. It would be a negation of reality not to recognize the emotional stresses to which an immigrant is subject when embarking upon the momentous steps of acquiring the long sought for status of a citizen. Careless and negligent though it may have been for Meli not to have uncovered the recorded errors, I do not, from such conduct, impute a fraudulent attempt to conceal.

The Government's contention that defendant concealed his prior applications for citizenship rests, therefore, on the assertion that the concealment took place when he furnished the information which formed the basis for the petition for naturalization. The preliminary form for petition for naturalization contained the following answer:

"I have not previously made petition for naturalization." The word "not" and other information on the form were filled in by the examining officer. This preliminary form was not signed by the defendant. The defendant stated at the hearing before me that he had no recollection of the circumstances surrounding the filing of the preliminary form, which is not unusual as to an incident that took place some twenty-eight years ago.

Sometime after the hearing was closed and the case submitted to me for determination, the Government located the examiner who questioned Meli when Meli submitted his preliminary petition for naturalization and who inserted the answer to the question concerning prior petitions. Over the objection of defense counsel, I permitted the reopening of the hearing to receive the testimony of this examiner. When he was asked what the inserted word "not" on the preliminary form meant he answered:

"It means that I asked him if he had ever made an application for final citizenship before and he said he had not."

Other than this statement by the examiner, who also stated that he did not remember the applicant or the examination in question, there is no evidence that this question or any other question about prior petitions was asked. The state-

ment that he asked the defendant whether he had ever "made an application for final citizenship before" may be nothing more than the examiner's supposition from the appearance of the inserted word "not" on the preliminary form. Moreover, what explanation, if any, was given to the defendant by the examiner as to the meaning of the phrase, "previously made petition for naturalization," is entirely conjectural.

A certificate of naturalization should not be revoked upon the basis of questions which may have been asked, especially when the answers to such questions, if asked, depend to so great an extent upon the proper communication of them to, and their comprehension by, the applicant. I find that there is no clear, unequivocal and convincing evidence of the alleged concealment of the filing of the prior petitions by the defendant.

■ I now turn to the allegation that the defendant concealed his criminal record. The defendant does not deny that prior to his naturalization he had been convicted of carrying a concealed weapon and fined one hundred dollars in 1920, and convicted and fined twenty-five dollars in 1922 for speeding, or that he had been arrested, but released, on a number of occasions on other charges, some of which were quite serious. I am not convinced from the evidence here, however, that the defendant concealed this record from the Naturalization Service.

The only evidence concerning the defendant's failure to disclose his criminal record is the inference which the Government draws from the notation "NCR" made by the same examiner, referred to above, on a small card known as a brief slip or docket slip. The brief slip was a paper on which the examiner made notes as he was orally examining the defendant. The examiner testified that "NCR" was the standard symbol for "no criminal record," but he again stated that he could not remember the defendant, or the questions asked and answers given.

Here, also, the examiner's testimony as to his practice casts great doubt on whether he accurately recorded the defendant's statement about his criminal record. He testified that it was his duty to ascertain whether applicants were of good moral character for five years before the application, in order to determine whether they were eligible to file a petition for naturalization. He stated that, although he was not required to ask a petitioner about his criminal record under the naturalization statute or departmental regulation applicable at the time, it was his practice to inquire about the applicant's criminal record in order to assess the applicant's moral character. It also appears that he made no specific notation on the brief slip as to moral character. It is not an unreasonable inference, therefore, that the notation "NCR" may have been a shorthand abbreviation for the examiner's conclusion that the applicant had no criminal record adversely affecting his good moral character. Hypothetical interpretations of nebulous symbols recorded twenty-eight years ago are not to be considered as "clear, unequivocal, and convincing evidence" which does not leave the issue in doubt.

In Cufari v. United States, 1 Cir., 217 F.2d 404, 409, the Government brought an action to revoke Cufari's naturalization on the ground that he had fraudulently procured his naturalization by concealing an extensive criminal record. The Government relied on the notation, "no arrest" appearing on the "docket slip" of the Naturalization Service which Cufari had signed, and testimony that it was the custom or practice of naturalization examiners to ask applicants for citizenship if they had ever been arrested. The Court, after noting that "Cufari's docket slip coupled with the evidence of the practice and custom of the Examiner * * * is enough to establish by the balance of the probabilities that Cufari was asked if he had ever been arrested and answered that he had not," concluded that the Government had not established its case by clear, unequivocal and convincing evidence which does not leave the issue in doubt.

Naturalization once conferred should not be taken away without the clearest sort of proof. I find that the Government has failed to sustain its burden of proof that the defendant procured his naturalization fraudulently or illegally.

An order is being entered dismissing the complaint.