**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Joe PROFACI, also known as Joseph
Profaci and as Giuseppe Profaci,
Defendant-Appellant.**

**No. 28, Docket 25578.**

United States Court of Appeals
Second Circuit.

Argued Nov. 2, 1959.

Decided Jan. 12, 1960.

Clark, Circuit Judge, dissented.

Samuel Paige, New York City (Paige & Paige, New York City, on the brief), for defendant-appellant.

Margaret E. Millus, Asst. U. S. Atty., Eastern District of New York, Brooklyn, N. Y. (Cornelius W. Wickersham, Jr., U. S. Atty., E.D.N.Y., Brooklyn, N. Y., on the brief), for plaintiff-appellee.

Before CLARK, HINCKS and WATERMAN, Circuit Judges.

HINCKS, Circuit Judge.

In 1921, the defendant, Joe Profaci, immigrated to the United States from Italy, the land of his birth. Six years later, in September of 1927, the defendant, then in his thirtieth year, was admitted to citizenship and a certificate of naturalization was issued to him. Now, some thirty years later, the court below, under § 304(a) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1451(a), has set aside Profaci's naturalization decree, on the ground that he fraudulently concealed his Italian arrest record in his naturalization proceedings. 168 F.Supp. 631.

One arrest, allegedly concealed, concededly led to a conviction in 1920 of the crime of forgery and a one year prison sentence in Palermo, Sicily. The Government's case rests upon the proposition that Profaci intentionally falsified in response to the oral question, "Were you ever arrested?" put to him by the preliminary naturalization examiner. The defendant contends the decree cannot stand because the Government failed to establish, by "clear, unequivocal, and convincing evidence which does not leave the issue in doubt," Klapprott v. United States, 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266; Schneiderman v. United States, 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796, either that the question was intended to cover foreign arrests or that it was so understood by the defendant. In a case such as this, we are bound to make a careful scrutiny of all the evidence. Nowak v. United States, 356 U.S. 660, 78 S.Ct. 955, 2 L.Ed.2d 1048; United States v. Hauck, 2 Cir., 155 F.2d 141. Having done so, we feel constrained to accept the defendant's contentions as above stated and accordingly reverse the decree.

Profaci testified that he was orally questioned about arrests at his preliminary examination, cf. Cufari v. United States, 1 Cir., 217 F.2d 404; United States v. Meli, D.C.E.D.Mich.S.D., 158 F.Supp. 217, affirmed 6 Cir., 265 F.2d 222, but that the question asked was either had he ever been arrested "in this country" or "in the United States." This testimony was characterized by the court as a "last desperate effort to escape the consequences of his fraud." However this may be, it is clear that disbelief of Profaci's version of the arrest question, which was corroborated by Arthur Massolo, a witness for Profaci at the time of his naturalization, does not establish the content of the actual question which Profaci, allegedly, falsely answered. To sustain its burden on this issue, the Government called two witnesses (both of whom had served as hearing examiners in 1927 and for many subsequent years) who testified that the

handwritten symbol "No C R," such as that which appeared in the record of Profaci's hearing, customarily indicated a negative response to the question, "Were you ever arrested?" Since both of the two examiners who actually questioned Profaci in 1927 had died, the crucial isue as to the precise content of the question could not be resolved simply by choosing between the conflicting testimony of those persons who actually heard it.

■ We recognize that customary behavior when firmly established can be effective circumstantial proof of what actually happened on a given occasion. See 1 Wigmore on Evidence (3rd Ed. 1940), §§ 92, 93; McCormick on Evidence (1954), § 162. But even if properly used here, we are still left in considerable doubt. It is clear that a written arrest question first appeared on naturalization forms in 1929, and that in 1927 neither statute nor departmental regulation required oral inquiry into an applicant's arrests.[1] See, e. g., United States v. Kessler, 3 Cir., 213 F.2d 53; Cufari v. United States, supra. The arrest question which was first incorporated into a naturalization form asked: "Have you ever been arrested or charged with violation of any law of the United States or State or City ordinance or any traffic violation?" The Third Circuit has held, quite properly we think, that this question should be interpreted as though the word "for" were inserted after the word "arrested," United States v. Kessler, supra, and thus read, it would seem to inquire solely into United States arrests. One of the Government witnesses testified that this question was intended to enlarge rather than narrow prior arrest questions and that with the passage of time the arrest question became more and more inclusive. Further-

more, in explaining why an examiner's report in 1936 contained the notation, "N. C. R. in or out of the United States," this same Government witness testified that when the Naturalization Service became "consolidated with the Immigration Service in *1933* it became important for the purpose of warrant proceedings to have a specific answer on that to arrests outside the United States," and that it was only after 1933 that it became customary to ask the question, "Have you ever been arrested in or out of the United States?" It was only then that examiners were "instructed to include also arrests outside the United States." A written question dealing specifically with arrests "in or out of the United States" did not appear in the naturalization form until the late 1940's. See United States v. Kessler, supra. But even the Government's evidence showed that in 1927 the form of the oral arrest question was not invariably uniform. For a Government witness testified that when an applicant with language difficulties did not appear to understand a particular question, the question would be rephrased in some other way and that each examiner was on his own with respect to the form of the follow-up question. Moreover, there was evidence that in 1927 Profaci's command of English was, at most, modest.

■ From the Government's evidence it thus appears, at most, that it was normal practice in 1927 to ask an applicant, "Were you ever arrested?" but that the practice and the phraseology was not invariable or one compelled by statute, regulation, or order. But even so, we feel that the Government has failed to establish in a clear and convincing manner the content of the actual arrest question to which Profaci allegedly gave an intentionally false answer. And any

[1]. The applicable Bureau of Naturalization order then in effect does not establish the form which such a question would take when asked.
  General Order No. 16 provided:
  "Where the petitioner is asked whether he has ever been arrested or charged with a violation of any law or ordinance, his response should be specifically noted in writing by the Examiner as part of the record of the examination."

doubts created by the Government's own evidence must be resolved in favor of the petitioner. Schneiderman v. United States, supra.

■ Even if it were sufficiently proved that Profaci was specifically asked, "Were you ever arrested?" the Government's proof does not convincingly demonstrate that the defendant actually understood the question to refer to arrests outside the United States, and especially to those preceding his hearing by more than five years. Such proof, we hold, was essential, cf. United States v. Rossi, 2 Cir., 182 F.2d 292, since illegal procurement as a ground for revocation of citizenship had been eliminated by the 1952 Act. United States v. Stromberg, 5 Cir., 227 F.2d 903.

■ Fraudulent intent and knowledge, absent a voluntary confession, is not often easily established. Knauer v. United States, 328 U.S. 654, 66 S.Ct. 1304, 90 L.Ed. 1500. Nevertheless, the law is not devoid of persuasive methods of probing the actual state of a man's mind. Cf. Smith v. California, 80 S.Ct. 215. And such a probe must establish strong inferences of falsification if citizenship is to be revoked. Nowak v. United States, supra; Baumgartner v. United States, 322 U.S. 665, 64 S.Ct. 1240, 88 L.Ed. 1525. Often it is possible to infer an intent to falsify and deceive from the mere untruthful response to a question, the clarity of which leaves little or no room for a reasonable explanation of misunderstanding. But, when a question is not reasonably free from ambiguity, a clear understanding thereof and an intent to deceive are not to be readily implied merely from a false answer. Such, we think, is the case here.

If we assume that Government examiners, in 1927, intended the question "Have you ever been arrested?" to include foreign arrests, it is significant that when changes in the language of the Act made it important to have a specific answer on arrests outside the United States, the question was changed to the unambiguous form, "Have you ever been arrested in or out of the United States?" Regardless of whether the Government itself thereby recognized the ambiguity of the previous arrest question for eliciting information with respect to foreign arrests, we think that a naturalization applicant could have reasonably interpreted the question "Have you ever been arrested?" as directed solely to United States arrests. The Naturalization Act then in force stated:

"It shall be made to appear to the satisfaction of the court admitting any alien to citizenship that immediately preceding the date of his application he has resided continuously within the United States five years at least * * * and that *during that time has behaved as a man of good moral character,* * * *" (Italics added.)

Since good moral character *during the prescribed five year period* in this country was the sole test of good moral character, Daddona v. United States, 2 Cir., 170 F.2d 964; Petition of Zele, 2 Cir., 127 F.2d 578, Id., 2 Cir., 140 F.2d 773; Application of Murra, 7 Cir., 178 F.2d 670, and naturalization could not be denied on account of arrests prior to the five years of residence in the United States, it could honestly have been thought that the examiner was not interested in earlier, foreign, arrests.

Moreover, the applicant's understanding of a question may well be affected by the context. For example, the arrest question if put immediately after inquiry as to residence in the United States might honestly be taken to refer to arrests in the United States even though, if put after inquiry as to prior Italian residence, a different interpretation would be natural. Thus the absence of evidence as to the sequence of interrogatories somewhat enlarges the room for doubt as to Profaci's understanding. It seems plain to us that the arrest question allegedly put to Profaci contained greater *ambiguity* than that present in the question which the Supreme Court discussed

in Nowak v. United States, supra [2] [356 U.S. 660, 78 S.Ct. 957].

The court below admitted evidence as to other suppressions, allegedly similar, occurring both before and after the defendant's naturalization as bearing upon his knowledge and intent as well as credibility. Of these, the most significant occurred in 1925 when the defendant desired to return to the United States from a visit in Italy. He then signed a visa application in the American Consul's office in Palermo, Italy, which, notwithstanding the prior service of a prison sentence in Palermo, contained statements that the defendant had "not been in prison" and was not a member of any of the classes therein listed which were excluded from admission to the United States, one of which was that of "Criminals." The defendant does not contend that this question referred only to prison in the United States and we will assume *arguendo* that these statements were knowingly and intentionally false,[3] as the trial judge found. Nevertheless, the fraud in Palermo, in 1925, obviously sheds no light on the content of the arrest question put to the defendant in the naturalization examination in 1927. And we think the false statement in 1925 as to the plainly stated fact that he had not been "in prison" was of doubtful admissibility, and certainly of slight probative value, to demonstrate his understanding of the ambiguous naturalization arrest question which arose in a different context. Cf. United States v. Rossi, supra. Of even less efficacy to prove that Profaci, when he answered the arrest question in the naturalization proceedings, actually understood that the question was intended to include foreign arrests, were the subsequent occasions to which the Government points, in 1928

when Profaci in a different context gave the same negative response to the same arrest question, or in 1953 when he told an immigration inspector that he had thought the naturalization question asked of him 26 years before had "meant [arrests] in the United States." Cf. Baumgartner v. United States, supra; Knauer v. United States, supra.

We hold that the Government has, with the requisite degree of certainty, neither convincingly established the content of the question put to Profaci nor, accepting the Government's position on this issue, filled the gap in its proof as to the defendant's understanding and knowing falsification of the question asked. Nowak v. United States, supra; United States v. Meli, supra.

Reversed with a direction to dismiss.

CLARK, Circuit Judge (dissenting).

In this case Chief Judge Bruchhausen, an experienced and restrained trial judge who heard and observed the several witnesses (including the defendant) at the three-day trial, made extensive findings and wrote a complete and convincing opinion, D.C.E.D.N.Y., 168 F.Supp. 631–636, to support his over-all conclusion: "The credible evidence is that the defendant concealed his criminal record from the authorities for more than twenty-five years and only divulged it when he could no longer challenge the inevitable." His findings under these circumstances should not be rejected unless they are shown to be clearly mistaken. Corrado v. United States, 6 Cir., 227 F.2d 780, 784, certiorari denied 351 U.S. 925, 76 S.Ct. 781, 100 L.Ed. 1455; F.R. 52(a). Actually they seem to me unanswered and unanswerable on this record. In fact the opinion does not attempt to answer the detailed case presented in the opinion

---

2. There the Court held that the questions "Are you a believer in anarchy? * * * Do you belong to or are you associated with any organization which teaches or advocates anarchy or the overthrow of existing government in this country? * * * *" did not unambiguously call "for disclosure of membership in an organization which advocates either anarchy or overthrow of existing government."

3. He testified that he did not personally prepare the application; that he was neither questioned nor asked to swear to it; and that he did not know the contents of the application.

below, but allows itself to be drawn off into a semantic morass, giving quite undue emphasis on this record to only a single question. There is just a hint of the strength of the government's case in the concession of the defendant's clear perjury in his written denial under oath in Palermo in 1925 of having been in prison or of being a member of the class of "Criminals." No excuse for this is here possible; and the other cumulative evidence analyzed by Judge Bruchhausen makes his result inevitable. His judgment should be affirmed.