**UNITED STATES of America,
Plaintiff,**

v.

**Delfino LEDESMA, Defendant.**

**Case No. 1:10–CV–38.**

United States District Court,
S.D. Texas,
Brownsville Division.

Signed March 29, 2012.

---

Craig Andrew Defoe, Sherry D. Soanes, United States Department of Justice, Washington, DC, for Plaintiff United States of America.

Juan Angel Guerra, Law Office of Juan Angel Guerra, Harlingen, TX, for Defendant Delfino Ledesma.

## MEMORANDUM OPINION

ANDREW S. HANEN, District Judge.

Before the Court is Plaintiff's ("Government" or "Plaintiff") Motion for Summary Judgment. Doc. No. 5 ("Pl.'s Mot. Summ. J."). Defendant Delfino Ledesma ("Ledesma" or "Defendant") filed a response to this motion, and later filed an amended response. Doc. No. 10; Doc. No. 21 ("Def.'s Am. Resp."). Plaintiff timely filed a reply memorandum in support of its motion for summary judgment, and this Court held a hearing in which it heard oral argument concerning this motion. Doc. No. 13 ("Pl.'s Reply"). The Court, after considering the motion, Defendant's response, and the argument of counsel at the hearing, grants the motion for the reasons set forth below.

## 1. Factual Summary [1]

This is a civil case in which the Government seeks to revoke the citizenship of the defendant, Ledesma, pursuant to 8 U.S.C. § 1451(a). Ledesma was born in Mexico in 1954. After traveling to the United States, Ledesma became a lawful permanent resident alien on July 20, 1984. On April 8, 1997, Ledesma filed an application for naturalization, Form N–400, with the then-named United States Immigration and Naturalization Service ("INS"). Of particular importance in this case, Part 7, Question 15(a) of the application for naturalization asked:

**15. Have you ever:**

> **a. knowingly committed any crime for which you have not been arrested?**

Ledesma wrote a check mark in the box labeled "**No**" corresponding to this question.

In December of 1997, Ledesma transported marijuana with a tractor-truck from San Benito, Texas to Houston, Texas. The Government attached as exhibits to its motion a sworn statement by Ledesma containing a description of this illegal transaction as well as the criminal judgment arising therefrom.

On September 16, 1998, Officer Rene Moreno of INS interviewed Ledesma about his application for naturalization. Although he "does not recall the specific date," Ledesma admits that this interview took place. Ledesma took an oath that he would truthfully answer all questions he was asked during the interview. During the interview, Ledesma reaffirmed his negative answer to Part 7, Question 15(a) of the application for naturalization, swearing that he had never knowingly committed a crime for which he had not been arrested. At the end of the interview,

---

1. The undisputed background facts recounted here were admitted either by Defendant in his answer, or were contained in the Government's uncontroverted summary judgment evidence.

Ledesma signed a sworn statement that "the contents of [his application for naturalization] ... were true to the best of [his] knowledge and belief."

On April 5, 1999, INS approved Ledesma's naturalization application. As a result, on April 22, 1999, Ledesma appeared for a naturalization oath ceremony. At the ceremony, Ledesma signed a certification that after his September 16, 1998 interview he had not knowingly committed any crime or offense for which he had not been arrested. Ledesma was then issued a certificate of naturalization.

On February 15, 2000, an indictment was filed against Ledesma in the United States District Court for the Southern District of Texas related to the December, 1997 drug transaction. The criminal indictment against Ledesma charged two counts: (1) conspiracy to possess with intent to distribute more than 100 kilograms of marijuana, and (2) possession with intent to distribute more than 100 kilograms of marijuana. On February 28, 2000, two immigration officers questioned Ledesma about his alleged role in the December, 1997 marijuana transaction, which formed the basis of the indictment. Ledesma then recounted the details of this incident in a sworn statement, which was attached as an exhibit to the Government's motion and is repeated in large part below. On May 1, 2000, Ledesma pleaded guilty to Count 2 of the indictment. The District Court sentenced Ledesma to 37 months imprisonment.

**2. Summary Judgment Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.,* 485 F.3d 253, 261 (5th Cir.2007) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Once a movant makes a properly supported motion, the burden shifts to the non-movant to show that summary judgment should not be granted. *Celotex,* 477 U.S. at 321–25, 106 S.Ct. 2548. The non-moving party must go beyond the pleadings and provide specific facts showing that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

There is an "unusually high burden of proof in denaturalization cases." *Kungys v. United States,* 485 U.S. 759, 776, 108 S.Ct. 1537, 99 L.Ed.2d 839 (1988). In these proceedings, the Government must prove its claims by "clear, unequivocal, and convincing evidence." *Schneiderman v. United States,* 320 U.S. 118, 158, 63 S.Ct. 1333, 87 L.Ed. 1796 (1943). The weight of this burden originates from a recognition that "the right to acquire American citizenship is a precious one and that once citizenship has been acquired, its loss can have severe and unsettling consequences." *Fedorenko v. United States,* 449 U.S. 490, 505, 101 S.Ct. 737, 66 L.Ed.2d 686 (1981). Therefore, the Court is particularly mindful that "in ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson,* 477 U.S. at 254, 106 S.Ct. 2505.

## 3. Discussion

### a. Procedural Objections

In his response, instead of addressing the Government's substantive grounds for denaturalization or providing controverting factual material, Ledesma lodges procedural and evidentiary objections to the Government's motion for summary judgment. In fact, despite the amount of time allowed for discovery in this case, Ledesma did not even include so much as an affidavit opposing the Government's motion. The Court finds no merit in his evidentiary and procedural objections, which are discussed below.

Ledesma begins by taking issue with the timing of the Court's consideration of the Government's motion. Ledesma argues that granting summary judgment at this stage is inappropriate because there has been no adequate opportunity for discovery. Ledesma further argues that he does not carry the usual burden of showing that specific discovery is still needed because here there has been no adequate initial opportunity for discovery.

 Under Rule 56(d) of the Federal Rules of Civil Procedure, a court may suspend consideration of a summary judgment motion if the non-movant shows "it cannot present facts essential to justify its opposition." In this case, this Court did just that on two separate occasions. In interpreting the substantially identical pre–2009 Amendment predecessor to this provision, the Fifth Circuit advised that "[s]uch motions are broadly favored and should be liberally granted." *Culwell v. City of Fort Worth,* 468 F.3d 868, 871 (5th Cir.2006). However, the non-movant must "set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the out-

come of the pending summary judgment motion." *Raby v. Livingston,* 600 F.3d 552, 561 (5th Cir.2010) (internal quotation marks omitted) (quoting *C.B. Trucking, Inc. v. Waste Management Inc.,* 137 F.3d 41, 44 (1st Cir.1998)). "The nonmovant may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts, ... particularly where ... ample time and opportunities for discovery have already lapsed." *SEC v. Spence & Green Chem. Co.,* 612 F.2d 896, 901 (5th Cir.1980); *see also Baker v. American Airlines, Inc.,* 430 F.3d 750, 756 (5th Cir.2005) ("A trial court cannot rule on a summary judgment motion where adequate discovery has been denied a party, ... but any party claiming the need for additional discovery to defend against a motion for summary judgment must make a sufficient showing under [the predecessor to FED.R.CIV.P. 56(d) ]."). "If it appears that further discovery will not provide evidence creating a genuine issue of material fact, the district court may grant summary judgment." *Access Telecom, Inc. v. MCI Telecommunications Corp.,* 197 F.3d 694, 720 (5th Cir.1999).

 Here, the alleged bases for additional discovery provided by Ledesma are not sufficiently specified, nor would they influence the outcome of the Government's motion for summary judgment. In his sometimes incoherent, amended response, Ledesma identifies a few discernable examples of matters warranting additional discovery. Initially, Ledesma requests the opportunity to depose Laura E. Aleman-Gasca "on the subject,"—presumably the circumstances surrounding Ledesma's application for naturalization, which is the subject of her declaration. This vague request does not sufficiently specify the facts that he hopes will emerge from such additional discovery, nor how those facts will influence the pending motion for sum-

mary judgment. Second, Ledesma vaguely requests the opportunity to pursue discovery regarding the authenticity of the application for naturalization, which is unconvincing for the same reasons. Third, Ledesma asserts a need to pursue discovery regarding the criminal judgment attached to the Government's motion, but, amidst various evidentiary objections, fails to explain what facts additional discovery would uncover.

■ More importantly, these contentions ring hollow in light of the history of this case, which has proceeded as follows:

February 23, 2010 The Government filed its Complaint in this Court.

May 6, 2011 The Government filed its motion for summary judgment.

June 9, 2011 Ledesma submitted a request for a continuance "in order to pursue further discovery," *which the Court granted.*

October 21, 2011 Instead of filing a proper response, which was due on this date, Ledesma filed a second request for a continuance, explaining "[c]ounsel has reviewed the volumus [sic] Alien file and has made a determination that witnesses need to be deposed."

October 22, 2011 Ledesma filed his amended response to the Government's motion for summary judgment, before the Court ruled on his second request for a continuance. In his

amended response, Ledesma repeated his objection that there had been no adequate opportunity for discovery.

October 28, 2011 The Government filed a response in opposition to Ledesma's second motion for continuance, stating that Ledesma "completely failed to pursue discovery" during the time period allotted to him by the Court's previous grant of a continuance. The Government alleged that counsel for Ledesma did not contact counsel for the Government at all for the purpose of pursuing depositions in the intervening time period. *Over the Government's strenuous objections, the Court granted Ledesma's second motion for a continuance,* resetting the deadline for Ledesma's response to December 16, 2011. Ledesma, however, failed to capitalize on this additional time. He did not file another amended response. This Court has waited almost an additional three months for a response, and none has been forthcoming. Instead, Ledesma filed a motion to dismiss pursuant to FED.R.CIV.P. 12.[2]

January 23, 2012 This Court held a hearing on the Government's motion for summary judgment.

Given the Court's assent to Ledesma's multiple requests for a continuance, the Court has certainly provided both parties with adequate opportunities to pursue discovery. Therefore, to the extent that this

---

**2.** Although Ledesma does not state which particular provision of Rule 12(b) his motion is filed under, it is untimely to assert any defense under this rule at this time. The defendant must file a motion asserting a Rule 12(b) defense before filing an answer. FED.R.CIV P. 12(b) (motion "must be made before pleading if a responsive pleading is allowed"); *see also* 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1361 (3d ed. 2004) ("If the defendant decides to assert a Rule 12(b) defense by motion, then he must

do so before filing the answer."). Ledesma already filed an answer, which, as the Government points out, closed the window for filing a motion under Rule 12(b). Although not pleaded in his previously filed answer, the primary thrust of Ledesma's motion is to assert laches, which is not available as a defense in a denaturalization proceeding. *See United States v. Benavides,* No. B–07–108, 2008 WL 362682 (S.D.Tex.2008) (unpublished); *United States v. Wang,* 404 F.Supp.2d 1155, 1158–59 (N.D.Cal.2005).

third request for more time contained in Ledesma's response is a motion, the Court denies it, and the Court denies all objections predicated upon Rule 56(d). Ledesma has had more than enough time to engage in discovery.

### b. Evidentiary Objections

In the response he did file, Ledesma also asserts several evidentiary objections to the summary judgment evidence. Pursuant to FED.R.CIV.P. 56(c)(2), in the context of a motion for summary judgment "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." The Advisory Committee Notes explain that under this provision: "The objection functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." FED.R.CIV.P. 56, Advisory Committee Notes, 2009 Amendments.

■ First, Ledesma objects to the declaration of Laura E. Aleman–Gasca, which was attached as an exhibit to the Government's motion. This declaration is cited by the Government in its motion to authenticate the application for naturalization and support its assertions about the circumstances surrounding the application for naturalization. Ledesma objects that this affidavit is unauthenticated. Under Rule 56(c), a motion for summary judgment may be supported by "affidavits or declarations." Pursuant to 28 U.S.C. § 1746, an unsworn declaration is treated with "like force and effect" as a sworn declaration or affidavit if it is "in writing of [a] person which is subscribed by him, as true under penalty or perjury, and dated," and includes substantially the following statement before the person's signature: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date)." This declaration meets these requirements. Since the Advisory Committee Notes specify that "[a] declaration that satisfies 28 U.S.C. § 1746 would satisfy the declaration requirement of Rule 902(11)," the declaration is self-authenticating. *See Lumoa v. Potter*, 351 F.Supp.2d 426, 430 (M.D.N.C.2004). This objection is overruled.

Second, Ledesma objects to the application for naturalization, attached to the Government's motion, as unauthenticated. However, the requirement of authentication is satisfied by the declarations of Laura E. Aleman–Gasca and Juanita Castillo, also attached to the Government's motion, which are sufficient to support a finding that the application for naturalization is what the Government claims. FED.R.EVID. 901 ("the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is"). Ledesma's similar objection to the criminal judgment attached to the Government's motion as unauthenticated fails because it is a copy of a self-authenticated public record.[3] FED.R.EVID. 902(4). Therefore, all of Ledesma's above objections to the authenticity of the Government's exhibits are overruled.

■ Ledesma also asserts vague hearsay objections to the Aleman–Gasca decla-

---

**3.** Inexplicably, Ledesma also argues that the criminal judgment is uncertified, and "[f]or the purposes of removability, conviction records must be certified ... and none such have been produced." Def.'s Am. Resp. at 4. Since this is not a removal proceeding, this Court is not inclined to address this objection. However, even if this record of conviction needs to be certified in a removal proceeding, it is a record from this Court and this Court hereby takes judicial notice of this judgment from this Court's own files.

ration and the naturalization application. The objection does not even make reference to any particular statement in a five page affidavit that Ledesma claims is hearsay. In its reply, the Government contends that the contents are not hearsay because they are the admissions of a party-opponent, or fall within the hearsay exceptions for records of regularly conducted activity or public records and reports. *See* FED.R.EVID. 803(6), (8). The Court agrees that the pertinent portions of these documents are not hearsay or are covered by hearsay exceptions. Therefore, Ledesma's hearsay objections are overruled.

#### c. Substantive Objections

Under 8 U.S.C. § 1451(a), the Government is charged with the duty of instituting denaturalization proceedings on the grounds that a citizenship order and certificate of naturalization "were illegally procured or were procured by concealment of a material fact or by willful misrepresentation." Here, the Government alleges three independent grounds for denaturalization: (1) Ledesma illegally procured his citizenship because he committed a crime that adversely reflected upon his good moral character during the statutory period preceding his naturalization; (2) Ledesma illegally procured his citizenship because he provided false testimony under oath; and (3) Ledesma procured his citizenship by willfully concealing, prior to naturalizing, his commission of a crime, which was material to the government's decision to allow him to naturalize. The Government's contentions regarding each of these grounds, and the Court's analysis of these contentions, is discussed in sequence below.

In his amended response, Ledesma lists numerous "questions of fact" that allegedly preclude entry of summary judgment. However, Ledesma does not specifically point to any controverting evidence in the record supporting his contentions, nor does he explain how the alleged disputed facts are germane to the Government's cause of action. While the burden on the nonmoving party is not heavy, the bare assertion that there are material facts in dispute is obviously not sufficient to carry this burden. *See* FED.R.CIV.P. 56(c)(1) ("A party asserting that a fact ... is genuinely disputed must support the assertion by ... citing to particular parts of materials in the record ... or showing that the materials cited do not establish the absence ... of a genuine dispute"); *Wise v. E.I. DuPont de Nemours & Co.,* 58 F.3d 193, 195 (5th Cir.1995) ("Once the burden of the moving party is discharged, the burden shifts to the nonmoving party to show, by either referring to evidentiary material in the record or by submitting additional evidentiary documents, that genuine issues of material fact remain to be resolved."). Furthermore, while a court is not required to search the entire record in hopes of finding an issue of material fact, this Court has, and has found none. *See RSR Corp. v. International Ins. Co.,* 612 F.3d 851, 857 (5th Cir.2010) ("The court has no duty to search the record for material fact issues."). Therefore, the Court turns to the Government's contentions to determine whether it has sufficiently carried its burden of establishing that there is no genuine dispute as to any fact material to its claims.

#### i. First Ground—Illegal Procurement Due to a Lack of Good Moral Character Resulting from the Commission of a Criminal Offense

 As its first ground for denaturalization, the Government argues that Ledesma illegally procured his naturalization certificate because he allegedly committed a drug trafficking offense in December of 1997. Illegal procurement of naturaliza-

tion is a basis for denaturalization. *See* § 1451(a) (stating independent ground for denaturalization where naturalization was "illegally procured"). A person illegally procures naturalization where he fails to comply with any of the statutory prerequisites to naturalization. *See Fedorenko v. United States,* 449 U.S. 490, 514, 101 S.Ct. 737, 66 L.Ed.2d 686 (1981). One such prerequisite requires that the applicant have been a person of good moral character for a statutory period beginning five years before the application was filed and ending when he takes the oath of allegiance. 8 U.S.C. § 1427(a)(3); 8 C.F.R. § 316.10(a)(1). By statute, a person cannot be regarded as a person of good moral character if he falls within one of several enumerated categories, including persons who were convicted of or admit committing certain controlled substance offenses or crimes involving "moral turpitude," and one who at any time has been convicted of an "aggravated felony." *See* 8 U.S.C. § 1101(f)(3), (8); 8 C.F.R. § 316.10(b)(1) & (2). Possession with intent to distribute more than 100 kilograms of marijuana, if followed by a conviction or admission of guilt, would certainly fall within at least some of these statutory categories.

In this case, the illegal act was *committed,* but not followed by *conviction* or an admission, within the relevant statutory period. This chronology of events—commission of a crime, naturalization, then indictment and conviction for the crime—does not clearly fall within the aforementioned enumerated categories. *See United States v. Mwalumba,* 688 F.Supp.2d 565, 570 (N.D.Tex.2010) ("The fact that [the defendant] was not convicted of his crimes until after he was naturalized takes him out of the ambit of § 1101(f)(3)."). Instead, the commission of a drug offense of this magnitude during the relevant statutory period falls under 8 C.F.R. § 316.10(b)(3)(iii), which states that "[u]n-

less the applicant establishes extenuating circumstances, the applicant shall be found to lack good moral character if, during the statutory period, the applicant ... *[c]ommitted* unlawful acts that adversely reflect upon the applicant's moral character...." *Id.* (emphasis added); *see United States v. Jean–Baptiste,* 395 F.3d 1190, 1193–94 (11th Cir.2005) ("[A] naturalized citizen who committed certain unlawful acts during the statutory period *prior* to taking the oath of allegiance but for which he was indicted, arrested and convicted *after* naturalization stands to lose his [citizenship] for lack of good moral character.") (emphasis in original); *Mwalumba,* 688 F.Supp.2d at 570 ("If a person commits a crime of moral turpitude during the statutory good-moral-character period but is not convicted of that crime until after gaining citizenship, he or she is subject to denaturalization under the 'catch-all' provisions of 8 U.S.C. § 1101(f) and 8 C.F.R. § 316.10(b)(3)(iii).").

Among the Government's evidence supporting this ground was a sworn statement/confession by Ledesma to federal agents in which he described the transaction, as well as the criminal judgment arising out of the transaction. An excerpt of this statement reads:

In early December 1997, I was solicited by a subject I know as "Guerro" to transport an unknown amount of marijuana from San Benito, Texas to Houston, Texas. I then picked up the marijuana at some property in San Benito, Texas and it was loaded into my tractor-truck owned by Reveille Trucking in Harlingen, Texas. Present at the loading of the marijuana was "Guerro" and several other people. The marijuana was delivered in an old pick-up truck with hay in the back. I traveled to Houston, Texas, accompanied by my common-law wife, Diana MELGOZA.

Diana was not a participant in the transportation of the marijuana.

Upon arriving in Rosenburg, Texas, south of Houston, I met with "Guerro" and several other unidentified men in a pick-up truck. I followed the men to a location near Hobby airport where they unloaded the marijuana into a van. I received a few thousand dollars in transportation fees, but did not receive what I had been promised. I returned to Combes, Texas. Later, my common-law wife met with "Guerro" in Harlingen, Texas, and received some more money. "Guerro" contacted me later and asked me to transport more marijuana, but I refused. "Guerro" accused me of stealing some of the marijuana I transported to Houston, but it was not true.

Also supporting the Government's contentions, Ledesma admitted that he pleaded guilty to Count 2 of the criminal indictment, which charged that he possessed with intent to distribute more than 100 kilograms of marijuana. By his guilty plea, Ledesma admitted the elements of the charged crime, including possession with intent to distribute more than 100 kilograms of marijuana, on a date that falls within the statutory period relevant to a showing of good moral character. *See Brazzell v. Adams,* 493 F.2d 489, 490 (5th Cir.1974). In view of his guilty plea, Ledesma is collaterally estopped from denying that he committed the charged offense. *See Id.* ("the general rule is that collateral estoppel applies equally whether the prior criminal adjudication was based on a jury verdict or a guilty plea"); *see, e.g., United States v. Akamo,* No. H–09–667, 2011 WL 1157332, at *6 (S.D.Tex. Mar. 25, 2011). Therefore, the Court finds that the Government is entitled to summary judgment on this independent ground for denaturalization.

### ii. Second Ground—Illegal Procurement Due to a Lack of Good Moral Character Resulting from False Testimony

▮▮▮ As its second ground for denaturalization, the Government alleges Ledesma illegally procured his citizenship because he provided false testimony under oath during his naturalization interview. *See* § 1451(a) (stating independent ground for denaturalization where naturalization was "illegally procured"). Under 8 U.S.C. § 1101(f)(6), a person will be found to lack the good moral character required to legally obtain citizenship if, during the statutory period, he gave false testimony for the purpose of obtaining immigration or naturalization benefits. This basis for denaturalization was addressed by the United States Supreme Court in *Kungys v. United States,* 485 U.S. 759, 108 S.Ct. 1537, 99 L.Ed.2d 839 (1988). There the Court explained that false testimony prohibited by § 1101(f)(6) need not be "material." *Id.* at 1551. Instead, this provision "denominates a person to be of bad moral character on account of having given false testimony if he has told even the most immaterial of lies with the subjective intent of obtaining immigration or naturalization benefits." *Id.; see also* 8 C.F.R. § 316.10(b)(2)(vi) (restating the irrelevance of materiality).

It is undisputed that Ledesma submitted to a naturalization interview, and that during the interview he was under oath. *See* Compl. at 4; Ans. at 6. The only facts before this Court are that Ledesma provided false testimony during the interview when he denied having committed any crime for which he had not been arrested. In support of this position, the Government cited portions of the Aleman–Gasca declaration describing the "standard practice and procedure" of an immigration offi-

cer conducting a naturalization interview.[4] This procedure includes inquiring whether the applicant had committed a crime for which he had not been arrested. According to the declaration, if an applicant answers this question in the affirmative, the interviewing officer would note this response on the application for naturalization itself. Ledesma's application contains no such notes. This evidence is sufficiently "clear, unequivocal, and convincing" that Ledesma gave false testimony for the purpose of obtaining naturalization benefits, rendering his naturalization "illegally procured." Ledesma has not pointed to any evidence that supports finding a genuine dispute of any material fact that would necessitate a trial. Therefore, even interpreting the evidence in a light favorable to Ledesma, the Court finds that the Government is entitled to summary judgment on this independent ground for denaturalization.

### iii. Third Ground—Willful and Material Misrepresentations and Concealment

■ As its third ground for denaturalization, the Government alleges that "Ledesma procured his citizenship by willfully concealing, prior to naturalizing, his commission of a crime[,] ... which was material to the government's decision to allow him to naturalize." This basis for denaturalization has been interpreted to include four requirements: (1) "the naturalized citizen must have misrepresented or concealed some fact"; (2) "the misrepresentation or concealment must have been willful"; (3) "the fact must have been material"; and (4) "the naturalized citizen must have procured citizenship as a result of the misrepresentation or concealment." *Kungys v. United States,* 485

U.S. 759, 767, 108 S.Ct. 1537, 99 L.Ed.2d 839 (1988).

First, according to the Government, Ledesma "misrepresented or concealed a fact" because Ledesma misrepresented and concealed his crime of possession of marijuana with intent to distribute in December 1997 at his September 16, 1998 naturalization interview. According to the Government's evidence, when the examining officer asked Ledesma whether he had ever knowingly committed any crime for which he had not been convicted, he answered "No." The Government contends, and this Court agrees, that this response misrepresented or concealed the illegal drug trafficking that occurred a few months prior to the naturalization interview. As discussed above, there is no disputed issue of material fact concerning whether Ledesma testified falsely about his earlier drug possession. Ledesma has proffered no evidence to raise a genuine dispute regarding the misrepresentation or concealment of his drug possession at the naturalization interview.

Second, the Government contends that Ledesma's misrepresentation or concealment was "willful" because the question posed during the naturalization interview "regarding past criminal conduct was straightforward and unambiguous; and Ledesma's criminal activity—transportation for money of a large amount of marijuana—was patently illegal." The Government cites *United States v. Profaci,* 274 F.2d 289 (2d Cir.1960), a § 1451(a) case in which the Second Circuit commented, "[o]ften it is possible to infer an intent to falsify and deceive from the mere untruthful response to a question, the clarity of which leaves little or no room for a reasonable explanation of misunderstanding."

---

**4.** The Court was notified by the parties that the immigration officer who actually conducted Ledesma's naturalization interview died

some time before the Government filed its Complaint in this case.

*Id.* at 292. The Court finds this reasoning sound, especially given the crime in question. The question was: "Have you ever knowingly committed any crime for which you have not been arrested?" The Government has provided "clear, unequivocal and convincing" that Ledesma's alleged misrepresentation or concealment was willful. Ledesma has, again, proffered no controverting evidence which could raise a material issue of fact.

Third, the Government contends that the fact misrepresented or concealed was "material" because "had Ledesma disclosed his criminal activity at his naturalization interview, INS would have denied his application because he was ineligible to naturalize." The Government then notes, however, that it is not required to prove that INS would have denied Ledesma's application had he disclosed his criminal activity. This view is correct under the Supreme Court's interpretation of the materiality requirement in *Kungys v. United States*, 485 U.S. 759, 108 S.Ct. 1537, 99 L.Ed.2d 839 (1988). There the Court explained that the proper inquiry is not whether the misrepresentation or concealment would have, more likely than not, produced a different decision or even triggered an investigation. *Id.* at 1547. The correct, and much less demanding, inquiry is "whether the misrepresentation or concealment had a natural tendency to produce the conclusion that the applicant was qualified." *Id.* The materiality of the misrepresentation or concealment is a question of law. *Id.* Here, the concealment of Ledesma's drug trafficking activity certainly tended to cause the Government to conclude that Ledesma was qualified for naturalization. In fact, according to the declaration of Aleman–Gasca, a former employee of INS who adjudicated naturalization applications, Ledesma's application would not have been approved had he indicated during his interview that he committed this criminal offense. There is no question that this misrepresentation is material under any test. Ledesma has not proffered any evidence to dispute this element. Therefore, even viewing the evidence in the light most favorable to the defendant, the Court finds that the Government has carried its burden to show materiality by clear, unequivocal, and convincing evidence.

Finally, the Government has obviously met its burden under the fourth element, that Ledesma "procured citizenship as a result of the misrepresentation or concealment," since Ledesma was granted citizenship subsequent to his alleged misrepresentation or concealment.

## 4. Conclusion

The Court holds, for the aforementioned reasons, that the Government met its burden to show that there is no genuine dispute of material fact as to all of the grounds for denaturalization contained in its motion. Ledesma has failed to produce any evidence in response, and has not raised a fact issue-material or otherwise. Despite the "unusually high burden of proof" required for revocation under § 1451(a), no reasonable jury could return a verdict in favor of Ledesma. Therefore, the Government's Motion for Summary Judgment [Doc. No. 5] is **GRANTED.**